No.   89-534

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

UNA R. EARL,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Larry Jent, Bozeman, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena, Montana
Patti Powell and James Yellowtail, Asst. Attorneys'
General, Helena, Montana
Craig Buehler, Fergus County Attorney, Lewistown,
Montana

Submitted on Briefs:   Feb. 22, 1990

Decided:   March 30, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Una R. Earl (Mrs. Earl) was convicted by jury trial in the District Court for the Tenth Judicial District, Fergus County, of misdemeanor failure to keep a bear tag attached to a bear she shot. She appeals. We affirm.

The issues are:

1. Was there sufficient evidence to convict Mrs. Earl of misdemeanor violation of § 87-2-509, MCA?

2. Did the Justice Court and the District Court properly deny Mrs. Earl's motion to dismiss based on a statute of limitations?

3. Did the District Court act properly in allowing the testimony of Agent Ron Hanlon about certain conversations?

In March 1988, two Montana Fish and Game inspectors made an inspection of Walt's Taxidermy near Judith Gap, Montana. The small shop was owned and operated by Walt Earl and was located at his home. Mr. Earl and his wife, Una Earl, had been licensed outfitters and guides in the State of Montana for some years.

Inside a freezer in the taxidermy shop, the inspectors found a plastic bag containing a frozen black bear hide with no visible tag attached. Mr. Earl speculated that the tag must be frozen inside the hide. The inspectors took the hide with them, intending to thaw it and find the tag.

2

The inspectors were unable to find a tag when the hide thawed. They called the Earls and told them that no tag was attached to the hide. Mr. Earl responded that he had found the tag inside the freezer and that Mrs. Earl had shot the bear in 1984. The inspectors returned to the Earls' home, retrieved the bear tag from Mrs. Earl, and cited her for "fail[ing] to keep tag attached to hide," a violation of § 87-2-509, MCA.

As a misdemeanor, this action was first brought in justice court. Mrs. Earl pled guilty in that court after unsuccessfully moving to dismiss based on a statute of limitations argument. She then appealed to district court, where she again unsuccessfully raised her statute of limitations argument. She was tried in district court before a six-person jury, was found guilty, and was fined $200 with a $20 surcharge.

I

Was there sufficient evidence to convict Mrs. Earl of misdemeanor violation of § 87-2-509, MCA?

Our standard of review is whether any rational trier of fact could have found Mrs. Earl guilty beyond a reasonable doubt of the essential elements of the crime. See State v. Price (Mont. 1988), 762 P.2d 232, 234, 45 St.Rep. 1798, 1800.

Section 87-2-509, MCA, provides that

> When any person takes or kills any game animal
> . . . the person shall immediately thereafter
> . . . attach the tag, coupon, or other marker

3

to the animal . . . . Such tag, coupon, or other marker shall be kept attached to the carcass so long as any considerable portion of the carcass remains unconsumed . . . .

The elements that the State was required to prove to support its charge against Mrs. Earl were that she 1) purposely or knowingly, 2) failed to keep a tag attached to the bear hide, 3) while it was possessed by her. Mrs. Earl argues that the State has failed to prove that she was in possession of the bear hide at any time when it was not tagged.

"Possession" is defined as the knowing control of something for a sufficient time to be able to terminate control. Section 45-2-101(52), MCA. Mrs. Earl testified that after she shot the bear, she tagged it while her husband gutted it. The family ate the meat and the hide was stored in the taxidermy freezer. According to Mrs. Earl's testimony at trial, she knew where the bear hide was at all times. She made no statement indicating that she had given it to her husband or otherwise abandoned control over it. We conclude that a rational jury could have found beyond a reasonable doubt that Mrs. Earl possessed the bear hide at the time of the 1988 inspection.

II

Did the Justice Court and the District Court properly deny Mrs. Earl's motion to dismiss based on a statute of limitations?

4

Mrs. Earl argues that this prosecution was barred under § 45-1-205(2), MCA, which provides:

(2) Except as otherwise provided by law, prosecutions for other offenses are subject to the following periods of limitation:

. . .

(b) A prosecution for a misdemeanor must be commenced within 1 year after it is committed.

She asserts that the statute of limitations began to run in 1984 when she shot the bear and gave the hide to her husband.

Mrs. Earl's continuing possession of the bear hide is discussed above under Issue I. As to whether the prosecution must have been brought within one year after the bear was shot, the District Court determined that this offense was a continuing one. We agree. Under § 87-2-509, MCA, the offense continues as long as "any considerable portion of the carcass remains unconsumed." We conclude that the court did not err in interpreting that language to mean as long as the bear hide remained to be taxidermied.

III

Did the District Court act properly in allowing the testimony of Agent Ron Hanlon about certain conversations?

The conversations at issue occurred in 1986 between Mr. Earl and United States Fish and Wildlife Service Agent Ron Hanlon, when Mr. Hanlon was inspecting Walt's Taxidermy. Mr. Hanlon testified at trial as follows:

5

Q. All right. Did the discussion about a bear that Una Earl shot come up during that conversation?

MR. JENT: Objection, the question calls for a hearsay answer.

THE COURT: Overruled.

Q. (By Mr. Buehler) Go ahead.

A. Yes, a conversation regarding a bear that she shot was discussed.

Q. You were part of that conversation.

A. Yes, I was, sir.

Q. That was pursuant to the reason that you were there talking about various different things, is that correct?

A. That is correct, sir.

Q. All right. What did you learn about a bear that was shot by Una Earl?

MR. JENT: Objection, the question is testifying from what he learned, which is hearsay.

THE COURT: Overruled.

A. I -- I learned through conversation and records that I examined that Una Earl killed a black bear in 1984, May of 1984 as I recall. And that this bear was later given to an individual, I believe his name was Lehman, in Pennsylvania to be taxidermied. This bear, along with at least one other were sold to Mr. Lehman for two hundred fifty dollars. The bear that Una Earl shot, and was described to me as the bear that she shot in 1984, was described as being a yearling bear. And it was further described as -- as being dorsal cut, down through the back, so that it could further be taxidermied in Pennsylvania as a lifesize bear.

6

MR. JENT: Objection, Your Honor. May counsel approach the bench?

[A bench conference was held.]

Mrs. Earl contends that the above was hearsay evidence not within any hearsay exception.

The State contends that because Mrs. Earl was present at the above conversation and made no objections to her husband's remarks, the testimony about the conversation was admissible under the hearsay exception for admissions of a party, Rule 801(2), M.R.Evid. Additionally, the State contends that the testimony has not been shown to be prejudicial to the defendant and that even if its admission was error, it was harmless error.

Mrs. Earl has not shown any relationship between the above testimony and any element of the misdemeanor crime with which she was charged. The State did not refer to this testimony in closing argument. "Only if there was a reasonable possibility that inadmissible evidence might have contributed to the conviction is there reversible error." State v. Brush (1987), 228 Mont. 247, 251, 741 P.2d 1333, 1335. Even if the admission of the testimony was error, it has not been shown to be anything but harmless error.

Affirmed.

_____
Chief Justice

We concur:

_John Conway Harrison_

_Diane G. Barz_

_R. C. McDonough_

_____
Justices