No. 95-063

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

ERNESTO RENDON,

      Defendant and Appellant.

FILED

SEP 21 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James B. Obie, Attorney at Law,
        Helena, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Cregg W. Coughlin, Assistant Attorney
        General, Helena, Montana

        Mike McGrath, Lewis and Clark County Attorney,
        Vicki Frazier, Deputy County Attorney,
        Helena, Montana

Submitted on Briefs:  August 10, 1995

Decided:  September 21, 1995

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Ernesto Rendon was charged by information, filed in the District Court for the First Judicial District in Lewis and Clark County, with felony assault, in violation of § 45-5-201(1)(a) and (3), MCA. Following a nonjury trial, he was found guilty of the crime charged. Rendon was sentenced to serve five years in the Montana State Prison. However, his sentence was suspended, based on several conditions. Rendon appeals his conviction. We affirm the judgment of the District Court.

Rendon raises two issues on appeal:

1. Did the District Court err when it denied Rendon's motion for mistrial on the basis of an allegation that the victim was coached while on the stand?

2. Did the District Court abuse its discretion when it excluded evidence intended to attack the credibility of the victim's mother?

### FACTUAL BACKGROUND

Ernesto Rendon lived with his girlfriend, Melanie Schmaus, and M.S., her son, for several years. On May 30, 1994, Rendon looked after M.S. in their family home while Schmaus worked a 4-11 p.m. shift. Schmaus stayed after work that night and drank several beers with her co-workers. When Schmaus arrived home at around 2 a.m., Rendon told her that her son had been injured earlier in the evening when he hit his head on the coffee table. Schmaus went into M.S.'s bedroom to check on him, but Rendon told her to let the

child sleep.  While in the bedroom, Schmaus could see a large bruise across the side of M.S.'s face.

When Schmaus returned from work the next day and examined M.S.'s bruises, she was told by M.S. that Rendon had struck him.

The following day, on June 1, 1994, Schmaus took M.S. to the emergency room at St. Peter's Hospital, where he was examined by James Hoyne, M.D., the emergency room doctor.

Dr. Hoyne testified at trial that when he examined M.S. he had marks on the right side of his face and significant bruises on the left side of his face.  Dr. Hoyne described the bruises on the left side of M.S.'s face as "three separate lines approximately an inch wide, separated by half-an-inch, what [sic] appeared to be starting at the cheek and going across the ear towards the forehead."  Dr. Hoyne testified that the bruises were caused by significant force and were consistent with M.S. having been struck by a hand. According to Dr. Hoyne, M.S. told him during the examination that he had been hit in the face.  Dr. Hoyne testified that Schmaus was probably in the room at the time, but that M.S. did not need any coaching to describe what had happened to him.

At trial, M.S. testified that Rendon had been mad at him and had "hitted me really fast."  When he was asked to demonstrate what had happened, M.S. used his right hand and swung it toward the left side of his face.  M.S. also indicated that Rendon had pushed him.

After the State presented its evidence, Rendon called a witness who testified that M.S. had been coached by a courtroom

observer while he gave his testimony. According to the witness, the observer would nod or shake her head in response to the State's questions, and M.S. would pause and answer consistently with the head motion. On the basis of this testimony, Rendon moved for a mistrial. However, the motion was denied. The District Court stated that based on its observation, the victim did not look to anyone for advice while he gave his testimony. The court also concluded that most of the critical testimony was not in the form of "yes" or "no" answers which could have been coached.

Rendon attempted to introduce evidence at trial to show Schmaus's intense dislike of and bias against him. It was Rendon's contention that this bias would indicate that Schmaus would "do everything she can against [Rendon] and lie to whatever extent necessary." Rendon further claimed that this evidence would suggest that Schmaus had instructed her son to testify falsely against him. The court, however, excluded the evidence, based on its conclusion that it was irrelevant.

## ISSUE 1

Did the District Court err when it denied Rendon's motion for mistrial on the basis of an allegation that the victim was coached while on the stand?

The standard of review for a district court's denial of a mistrial is whether there is clear and convincing evidence that the court's ruling is erroneous. *State v. Greytak* (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098. This Court has held that a mistrial is

4

appropriate only when there is a demonstration of manifest necessity and where the defendant has been denied a fair and impartial trial. *Greytak*, 865 P.2d at 1098.

Rendon maintains that the District Court erred when it denied his motion for mistrial based on the alleged coaching of the victim by a courtroom observer. He asserts that he was denied his Sixth Amendment right to confront the witness, whom he contends was actually the courtroom observer. Rendon offers as evidence only the testimony of a witness who observed the alleged coaching. This witness admitted that he did not have a view of M.S. to determine if M.S. was watching the courtroom observer before he responded. The trial judge, on the other hand, noted that he had watched M.S. during his testimony and that he did not appear to be looking for assistance.

Based on the record, we conclude that the District Court did not err when it denied Rendon's motion for a mistrial. The district court is in the best position to determine whether coaching of a witness has occurred, and if so, has broad discretion to determine whether such coaching has been prejudicial to either party.

The court stated that based on its observation, M.S. was not looking to anyone to aid his testimony. M.S. answered critical questions in complete sentences in his own words. The court also concluded that most of M.S.'s responses were not the type of answers that could have been coached from the audience.

5

We conclude that there is not clear and convincing evidence that the District Court's denial of Rendon's motion for mistrial was erroneous. We affirm the District Court's denial of Rendon's motion for mistrial.

## ISSUE 2

Did the District Court abuse its discretion when it excluded evidence intended to attack the credibility of the victim's mother?

The standard of review for district court evidentiary rulings is whether the court abused its discretion. *State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge, and absent a showing of abuse of discretion, will not be overturned. *Gollehon*, 864 P.2d at 1263.

Rendon contends that the District Court erred when it prohibited him from introducing evidence about the victim's mother, Melanie Schmaus. The proffered evidence consisted of testimony about the antagonistic relationship between Rendon and Schmaus as illustrated by several specific acts of conduct. Rendon argues that the purpose of the evidence was to establish the bias or motive of Schmaus to testify falsely against him at trial and to influence the testimony of her son.

The District Court excluded the proposed evidence, based on its conclusion that the evidence was irrelevant. Rule 401, M.R.Evid., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence

6

to the determination of the action more probable or less probable than it would be without the evidence."

The District Court took note of the poor relationship between Schmaus and Rendon in its decision, but held that Rendon's conviction did not depend on Schmaus's testimony. Schmaus's testimony was basically foundational and undisputed. Rendon's conviction was supported primarily by physical evidence which was inconsistent with his version of events and the direct testimony of M.S. Furthermore, since the District Court was already aware of the hostility between Schmaus and Rendon, the proffered evidence would have, at best, been cumulative.

We conclude that the District Court did not abuse its discretion when it excluded evidence designed to attack the credibility of the victim's mother.

We affirm appellant's conviction for felony assault.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

7