No. 96-062

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

DALE R. WALKER,

      Defendant and Appellant.

FILED

DEC 27 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Carrie L. Garber and Jeffrey G. Michael,
          Deputy Public Defenders, Billings, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Jennifer Anders, Assistant Attorney General,
          Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney,
          Billings, Montana

Submitted on Briefs:  August 22, 1996

Decided:  December 27, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Defendant Dale R. Walker appeals from the judgment and commitment entered by the Thirteenth Judicial District Court, Yellowstone County, convicting him of felony forgery. We affirm.

The issues on appeal are as follows:

1. Did the District Court err by admitting into evidence still-frame photographs made from the original bank surveillance tape?

2. Did the District Court err in denying Walker's motion for a mistrial when one of the State's witnesses testified that he was familiar with Walker from past forgery investigations?

3. Did the District Court err in denying Walker's motion for a new trial on the ground of jury misconduct?

FACTS

On the afternoon of December 13, 1994, a man identifying himself as Terry L. Bergstrom approached teller Mary Jo Kellison at the Security Federal Bank in Laurel, Montana, and attempted to cash a $2000 check. The check was issued by the Edward D. Jones Co. to Terry L. Bergstrom on the custodial account of Wendy Jo Bergstrom. The check was endorsed with both signatures and what appeared to be corresponding social security numbers. Mary Jo requested approval from her supervisor, Vickie Ripley, before cashing the check. Vickie refused to approve the transaction because she did not recognize the customer. She told Mary Jo that the check would be approved if the customer opened an account.

2

The customer agreed to open both a checking and savings account and presented Mary Jo with a temporary driver's license which identified him as Terry L. Bergstrom. After completing the paperwork necessary to open the accounts, $1000 was deposited into the checking account, $500 into the savings account, and $500 was distributed to Mr. Bergstrom, along with a new checking account kit containing eight counter checks.

Later that afternoon, Vickie received a call from the Billings branch of Security Federal Bank. Mr. Bergstrom was at the Billings branch trying to cash a $600 counter check and the bank was calling to request a signature verification. Vickie became suspicious since she knew that Mr. Bergstrom had just received $500 cash back from the $2000 deposit he made earlier that day. She told the Billings branch not to cash the check since Mr. Bergstrom did not have a picture ID and there was no signature card on file with the bank.

The Laurel branch of the bank subsequently ran the name "Terry Bergstrom" through their computer and discovered that the bank had processed a mortgage loan in the name of "Tim and Terry Bergstrom." The bank attempted to contact Terry Bergstrom to find out what was going on. Mary Jo was able to reach the Tim Bergstrom residence and discovered that "Terry L. Bergstrom" was a woman. The bank then contacted the police.

Laurel Police Officer Bryan Fisher obtained the surveillance tape from the bank and asked Officer Brett Lund, a forgery specialist with the Billings Police Department, to view the tape

3

and the forged check. After viewing the signature and the videotape, Officer Lund believed that the signature had been forged by Walker, whom he recognized from previous forgery investigations.

Officer Lund assembled a photographic lineup consisting of six pictures, the first of which was Walker. Officer Fisher showed the lineup to Mary Jo, Vickie, and a third bank employee who had been present during the Bergstrom transaction. All three women identified the man in photo No. 1 as the man who posed as Terry Bergstrom.

On January 19, 1995, the State charged Walker by Information with forgery, a felony, pursuant to § 45-6-325, MCA. On June 12 through 14, 1995, a jury trial was conducted which resulted in a guilty verdict. Walker filed a motion for a new trial, which the District Court denied. On September 28, 1995, the District Court entered its judgment and commitment, sentencing Walker to twenty years in the Montana State Prison. This appeal followed.

ISSUE 1

Did the District Court err by admitting into evidence still-frame photographs made from the original bank surveillance tape?

Before trial, the State learned that the bank's surveillance tape was incompatible with a normal videotape machine. The tape would only play well on the type of machine owned by the bank and the bank would not release its machine because it would be left without surveillance. The State had a copy of the videotape made and a number of still-frame photographs were then produced from the

4

copy. The original videotape was played for the jury on a normal videotape machine but since the quality of the tape was poor, the court allowed the jury to view the copy of the tape. The quality of the copy was not much clearer than the original and the court then allowed the State to admit the still photographs into evidence.

Walker argues on appeal that the District Court erred in admitting the photographs into evidence in violation of the "best evidence rule" as codified in Rules 1001 through 1003, M.R.Evid. Walker claims that the requirements of the best evidence rule required the jury to view the original surveillance tape on the bank videotape machine.

The State argues that Walker did not properly preserve the "best evidence rule" argument for appeal and that even if the District Court erred in admitting the photographs, such error is not grounds for reversing the conviction since Walker cannot demonstrate how the error affected his substantial rights.

During pretrial discussions Walker's attorney indicated he would object to the admissibility of the photographs if they were offered into evidence. The court suggested that the prosecutor be prepared to lay a proper foundation as to whether the photographs were true copies of the original tape. During the State's direct examination of Officer Fisher, defense counsel made the following statement to the court after the prosecutor indicated it was time to talk about the videotape and the photographs:

DEFENSE COUNSEL: Well, I'm going to object on the best evidence that the ---

5

THE COURT: Well, you may have to call a person from the bank.

DEFENSE COUNSEL: I don't know that. The jury has the right to see the entire tape, as well.

THE COURT: Let's proceed.

Officer Fisher was then asked to identify the still photographs which were made from the videotape. Defense counsel objected for lack of foundation and the court sustained the objection. The State indicated it would lay the proper foundation for the photographs with its next witness.

The State then called Michael Taylor as a witness. Taylor owns a video and sound store and was the individual who made the copy of the videotape and reproduced the still photographs. After Taylor testified that the copy accurately reflected the content of the original and that the photographs were accurate reproductions from the tape, the State offered the photographs into evidence. Defense counsel objected for lack of foundation and chain of custody problems.

The court directed the attorneys into chambers where it cautioned the prosecutor that a proper foundation would require testimony from a number of witnesses. The court asked defense counsel if he had any doubt about the tape being the original. Defense counsel responded that he did not but indicated that the best evidence was the original tape and not the copy. The court stated that the prosecutor should lay the proper foundation, show the original tape to the jury, and if the quality was poor, lay additional foundation to allow the jury to view the copy. The

6

court would then consider whether it would be necessary for the jury to see the still photographs. The court assured defense counsel that the jury would not view the photographs without seeing the videotape. At that point, defense counsel agreed to waive his prior objection regarding chain of custody and stated "as long as you introduce that videotape and play it, the original, then I don't care where you go from there."

Court reconvened and the original tape and copy were admitted into evidence and viewed by the jury. The State then offered into evidence the still photographs, whereupon defense counsel objected on three grounds: (1) lack of foundation; (2) chain of custody; and (3) surprise. The court overruled the first two objections and, after recess, defense counsel agreed that he was not truly surprised that still photographs were going to be used and therefore waived any objection in that regard. After establishing that the photographs depicted events which were taped by the bank surveillance camera during the time Walker was present in the bank, the State offered the photographs into evidence.

> PROSECUTOR: Your Honor, at this time I move into evidence State's Exhibits 4 through 8 [the still-frame photographs].
>
> THE COURT: Any objection?
>
> DEFENSE COUNSEL: No objection, Your Honor.

This court has consistently held that a party's failure to object to an alleged error during trial precludes raising the issue on appeal. Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 151, 900 P.2d 281, 284; Bridger v. Lake (1995), 271 Mont. 186, 193,

7

896 P.2d 406, 410; State v. Arlington (1994), 265 Mont. 127, 151 875 P.2d 307, 321. Section 46-20-104(2), MCA, provides that failure to make a timely objection during trial constitutes a waiver of the objection except as provided in § 46-20-701(2), MCA.

Walker argues that the transcript shows that defense counsel sufficiently objected to the admission of both the videotapes and the still-frame photographs on "best evidence" grounds and that the "objection" was never withdrawn. On the contrary, the record indicates that when the still photographs were offered into evidence, Walker was specifically asked if he had any objections. Defense counsel said no. His prior objections for lack of foundation, chain of custody, and surprise had all been withdrawn or overruled and the photographs were admitted into evidence free from any objection that the evidence violated the provisions of Rules 1001 through 1003, M.R.Evid.

The record clearly indicates that Walker assented to the photographs being admitted once the proper foundation was laid to depict that they accurately represented the contents of the videotape when Walker was present in the bank. Defense counsel's earlier allusions to the original videotape being the "best evidence" are not sufficient to constitute an adequate and timely objection that admission of the photographs violated the best evidence rule. As a result, the District Court was never given the opportunity to rule on the matter and we therefore hold that Walker is precluded from raising this evidentiary issue on appeal.

8

ISSUE 2

Did the District Court err in denying Walker's motion for a mistrial when one of the State's witnesses testified that he was familiar with Walker from past forgery investigations?

On direct examination, Officer Lund testified that he recognized Walker on the videotape because "I have had past dealings with Mr. Walker . . . in regards to past forgery investigations." Defense counsel objected and the court directed counsel to chambers. The court asked the prosecutor if the State had provided the defendant notice that it intended to introduce evidence of past crimes as required by State v. Just (1979), 184 Mont. 262, 602 P.2d 957 (as modified in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52). The prosecutor admitted that no Just notice had been given. Defense counsel then moved for a mistrial. The District Court denied the motion and stated that, instead, it would admonish the jury to not consider the testimony. Court reconvened and the jury was admonished to completely disregard any references made to prior investigations Officer Lund had conducted which apparently involved Walker.

Walker argues that Officer Lund's statement was clearly inadmissible. Walker relies on State v. Anderson (1996), 275 Mont. 344, 349, 912 P.2d 801, 804, where we stated that it is inevitable that the introduction of evidence of a prior crime will have some prejudicial effect on a defendant. Moreover, Walker argues that the court's curative admonition cannot eliminate the taint of Officer Lund's testimony.

9

We review a district court's denial of a motion for a mistrial to determine whether there is clear and convincing evidence that the court's ruling is erroneous. State v. Rendon (1995), 273 Mont. 303, 306, 903 P.2d 183, 185. We have recently clarified the criteria the district court should use when ruling on a motion for a mistrial. The court will grant a mistrial when there is either a demonstration of manifest necessity or where the defendant has been denied a fair and impartial trial. State v. Ford (Mont. Oct. 17, 1996), No. 95-158, slip op. at 9. Nevertheless, this Court's role remains to determine whether there is clear and convincing evidence that the court's ruling is erroneous.

In Matt, we announced the modified Just rule and stated that:

> Evidence of other crimes, wrongs or acts may not be received unless there has been written notice to the defendant that such evidence is to be introduced.

Matt, 814 P.2d at 56. Officer Lund's statement that he recognized Walker from previous forgery investigations was evidence of other alleged crimes, wrongs, or acts. The State acknowledges that no Just notice was given. Thus, the statement should not have been received into evidence.

We have stated that an error in the admission of evidence may be cured if the jury is admonished to disregard it. State v. Greytak (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098 (citing State v. Conrad (1990), 241 Mont. 1, 19, 785 P.2d 185, 190). Moreover, we have held that reversible error exists only where there is a reasonable possibility that the inadmissible evidence might have contributed to the conviction. State v. Cline (1996),

10

275 Mont. 46, 57-58, 909 P.2d 1171, 1179 (citing State v. Earl (1990), 242 Mont. 279, 283, 790 P.2d 464, 466). In the present case, Officer Lund testified that he recognized Walker on the videotape and that Walker's handwriting on the forged check was familiar to him. Moreover, the jury had already heard Officer Fisher testify that following the crime he presented a photo line-up to Vickie, Mary Jo, and Lanaya Aafedt, a third bank employee present in the bank on the day in question. Officer Fisher stated that all three women identified Walker from the photo line-up as the man who posed as Terry Bergstrom. Vickie, Mary Jo, and Lanaya also made in-court identifications of Walker during trial.

In light of the entire evidence presented in this case, combined with the court's prompt admonition to the jury, we determine that Officer Lund's statement, by itself, did not contribute to Walker's conviction. Receipt of Officer Lund's statement into the record was, therefore, harmless error. We conclude that the record in this case does not contain clear and convincing evidence that the District Court's denial of Walker's motion for a mistrial was erroneous and we hold that the court did not err when it denied the motion.

### ISSUE 3

Did the District Court err in denying Walker's motion for a new trial on the ground of jury misconduct?

During deliberations the jury submitted a written question to the court requesting the use of a magnifying glass. Defense

11

counsel objected and the court wrote the jury back denying the request. The jury wrote the court a second note as follows:

> Your Honor, I feel it is necessary to inform you that after you told us you 'couldn't provide us with a magnifying glass' we discovered that a number of the jurors have bifocals which magnified and one of the jurors had a small strip of plastic used to magnify. These proved very helpful to us, but I hope we didn't impune [sic] the integrity of this jury.

As a result, defense counsel moved for a mistrial on the grounds that the jury created a magnifying glass on its own and did an investigation outside of what it heard in the courtroom. The District Court stated that it would reserve ruling on the motion for mistrial until after the jury reached a verdict.

Following the jury's guilty verdict, Walker moved for a new trial, arguing that the jury's use of a magnification device constituted extrinsic evidence. Walker attached to his supporting brief transcribed interviews from two jurors. The juror statements indicated that members of the jury had used a piece of plastic that one member had taken from her purse to help them identify the defendant and to view a tattoo on the defendant's arm which had appeared on the videotape during trial. Relying on United States v. George (9th Cir. 1995), 56 F.3d 1078, the District Court denied Walker's motion.

We review a district court's ruling on a motion for a new trial to determine whether the court abused its discretion. Hando, 900 P.2d at 283. Absent an abuse of discretion the district court's decision concerning whether or not to grant a motion for a

12

new trial will be affirmed. State v. Hatfield (1995), 269 Mont. 307, 310, 888 P.2d 899, 901.

On appeal, Walker presents a slightly different argument. He does not argue that use of a magnifying glass constitutes extrinsic evidence, or that use of a magnifying glass is prejudicial per se. Instead, Walker argues that use of the makeshift magnification device constitutes "extraneous prejudicial information" as defined in Rule 606(b)(1), M.R.Evid., resulting in jury misconduct. Walker relies on State v. McNatt (1993), 257 Mont. 468, 849 P.2d 1050, and State v. DeGraw (1988), 235 Mont. 53, 764 P.2d 1290, to argue that the State failed to rebut the presumption of prejudice which resulted from the alleged jury misconduct.

Rule 606(b)(1), M.R.Evid., provides that a juror may not testify as to what occurred during the jury's deliberations except when the information pertains to whether extraneous prejudicial information was improperly brought to the jury's attention. In State v. Brogan (1995), 272 Mont. 156, 900 P.2d 284, we held that juror affidavits may not be used to impeach a verdict based upon internal influences on the jury. Brogan, 900 P.2d at 287 (citing Harry v. Elderkin (1981), 196 Mont. 1, 8, 637 P.2d 809, 813).

We must therefore determine whether use of the magnification device constitutes an external or internal influence upon the jury. It is only if use of the magnification device constitutes an external influence that the juror statements may be considered to determine if extraneous prejudicial information was brought before the jury. Examples of external influence include a juror's

13

telephone call obtaining information with regard to previous litigation by the plaintiff, visiting the scene of an accident, or bringing a newspaper article about the trial into the jury room for the jurors to see. Brogan, 900 P.2d at 287 (citing Geiger v. Sherrodd (1993), 262 Mont. 505, 510-11, 866 P.2d 1106, 1109).

We turn to three recent decisions from the Ninth Circuit Court of Appeals for direction. In George, the court concluded that the jurors' use of a magnifying glass, in and of itself, did not constitute extrinsic evidence and that no new evidence resulted. George, 56 F.3d at 1084. In United States v. Brewer (9th Cir. 1986), 783 F.2d 841, 843, the court held that the use of a magnifying glass was indistinguishable from a juror's use of corrective eyeglasses to examine evidence. Finally, in United States v. Miranda (9th Cir. 1993), 986 F.2d 1283, 1286, the court noted that a defendant alleging juror misconduct involving a magnifying glass conceded, "as he must," that a magnifying glass is not extrinsic evidence. It is clear that a jury's use of a magnification device does not constitute extrinsic evidence.

Walker's argument that use of the magnification device created "extraneous prejudicial information" as opposed to "extrinsic evidence" presents only a subtle distinction. Since a jury's use of a magnifying glass does not constitute extrinsic evidence, we conclude that such use cannot be considered an external influence exposing the jury to extraneous prejudicial information. The jury's use of the makeshift magnification device was an internal

14

influence on its deliberation and the juror statements may therefore not be used to impeach the verdict.

Moreover, even if we were to assume that the magnification device was an external influence, thus allowing the juror statements to be considered, the record does not clearly indicate that the jury's use of the magnification device prejudiced the defendant. One of the jurors said in her statement that use of the plastic strip did not help identify the defendant and that "you really could not identify that as the defendant" and "it only made us, ah, even more unsure." Thus, there was no threshold showing of prejudice for the State to rebut.

We conclude that the District Court did not abuse its discretion when it denied Walker's motion for a new trial based on jury misconduct.

Affirmed.

_____
                Justice

We concur:

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusion resolving the first and third issues.

I dissent from the majority's conclusion that Detective Brett Lund's testimony regarding other alleged crimes committed by the defendant was harmless error.

I do not disagree with the majority's recitation of the facts, nor its analysis of the law, which pertain to that issue. I do disagree with its conclusion that based on other evidence, and the court's admonition to the jury, there is no reasonable possibility that the inadmissible evidence contributed to Walker's conviction.

Walker was charged with and convicted of forgery. The jury was advised by a detective employed by the Billings Police Department that he had investigated Walker for the very same kind of crimes in the past and was familiar with him on that basis. Evidence that a person accused of a crime has committed similar acts in the past is among the most prejudicial types of evidence that can be offered. That is why evidence of prior acts is normally inadmissible. *See* Rule 404(b), M.R.Evid. That is why we have established procedural safeguards for consideration of such evidence, even when it falls within one of the exceptions to the general rule. *See State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52.

Although there was other evidence from which the jury could have found the defendant guilty of forgery, the jury apparently did

16

not consider the evidence conclusive, or it would not have bothered sending two notes to the District Judge in which they requested better equipment with which to view the bank's video tape, and told the court that they had used a magnifying glass to view the still photos taken from the bank's video tape. The jury's uncertainty about the identity of the actual forger was apparently caused by the fact that Walker's arms and hands were tattooed and no tattoos were reported by eye witnesses who observed the forger on the day in question.

Furthermore, I would conclude that the District Court's admonition, while well intended and consistent with our prior decisions, accomplished absolutely nothing. In fact, the course of events following Detective Lund's improper testimony obviously emphasized its significance. First of all, Walker's counsel was required to state an objection on the record; then the trial judge and attorneys retreated from the courtroom for a discussion outside the presence of the jury; and finally, upon their return to the courtroom the jury was instructed by the court to disregard Detective Lund's previous testimony regarding prior involvement in forgery investigations. By that time, it had to be obvious to the jury that Detective Lund had inappropriately told them something very significant, otherwise the defendant and the District Court would not have been so concerned about it.

While there may be other circumstances in which a proper admonition to a jury could be effective, this was not one of them. The jury was simply told that the Billings Police Department had

17

reason to believe that this person, accused of forgery, had forged other documents in the past. That was not the kind of information that could be erased from the minds of those entrusted with the responsibility for deciding Walker's guilt.

For these reasons, I dissent from the majority's resolution of Issue 2. I would conclude that because testimony was given regarding crimes allegedly committed by the defendant in the past without compliance with those procedural safeguards which we held were necessary in *Matt*, Walker was denied a fair trial and the District Court, therefore, abused its discretion when it denied his motion for a mistrial.

_____
Justice

18

December 27, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jeffrey G. Michael and Carrie L. Garber
Deputy Public Defenders
2708-1st Ave. No., Ste. 400
Billings, MT 59101

Hon. Joseph P. Mazurek, A.G.
Jennifer Anders, Assistant
Justice Bldg.
Helena, MT 59620

Dennis Paxinos, County Attorney
Dale R. Mrkich, Deputy; Triel Culver, Deputy
P.O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy