No. 96-554

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RAY HUETHER,

Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Roberta A. Drew, Deputy Public Defender, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Helena, Montana
Cregg W. Coughlin, Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney and Melanie B. Logan,
Deputy
County Attorney, Billings, Montana

Submitted on Briefs: May 15, 1997

Decided:    August 26, 1997
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


Ray Huether (Huether) appeals from the Thirteenth Judicial District Court's order
denying his motion to exclude evidence of other crimes, wrongs, or acts. We affirm.
We address the following dispositive issue on appeal:
Did the District Court abuse its discretion in admitting evidence that
Huetherþs infant son had died while in his care seven months prior to the
death of his infant daughter?


BACKGROUND

Since this case involves a plea of guilty, the following facts are taken primarily
from the affidavit in support of the State's motion to file the information.  At
approximately 4:52 p.m. on May 16, 1995, Huether called 911 to report that "an infant"
in his care had stopped breathing.  Emergency personnel arrived at the Huether residence
and found Huether's daughter Becca Huether (Becca), aged two and one-half months,
without a pulse and unable to breathe on her own.  Huether explained to the emergency
personnel that he had put Becca down at approximately 4:30 p.m. and, when he checked
on her a short time later, found her not breathing and without a pulse.  Attempts were
made to resuscitate Becca and she was transported to the emergency room at St. Vincent
Hospital.  Despite continued resuscitation efforts and after an examination by an
emergency room doctor, Becca was pronounced dead at approximately 5:35 p.m. on May
16, 1995.

At the hospital, Huether told different versions of the afternoon's events leading
up to his discovery of Becca's lifeless body.  Huether told Yellowstone County Deputy
Coroner Keith Montgomery (Coroner Montgomery) that he had last seen Becca alive at
3:30 that afternoon and heard her in her bassinet at 4:00 p.m.  Huether said, however,
that he had fallen asleep after taking some cold medicine and that when he woke up he
found that Becca was not breathing.

Yellowstone County Sheriff's Department Detective Dick Hirschi (Detective
Hirschi) was dispatched to the hospital, spoke with Coroner Montgomery and met with
the Huether family including Huether's wife, Christina.  Huether's version to Detective
Hirschi differed from the versions he gave Coroner Montgomery and the emergency
personnel.  Huether told Detective Hirschi that when Christina left for work at
approximately 3:00 p.m. that day he was left in charge of Becca and their other children,
a five-year-old daughter and six-year-old son.  Huether said that approximately one-half

hour after Christina left, he received a telephone call from Jeanette Miller (Miller).

Huether told Detective Hirschi that he was in his bedroom talking to Miller and had placed Becca in her bassinet near his bed.  He stated he laid on his bed and continued to speak to Miller until approximately 4:50 p.m. when he checked on Becca and found her blue in color and not breathing.

Detective Hirschi later contacted Miller and she stated that ten to fifteen minutes into her telephone conversation with Huether she could hear a baby crying loudly in the background.  She said she teasingly stated to Huether that he must be pinching the baby and that the baby did not sound happy; Huether replied that the baby was not happy a lot of the time.  Approximately thirty minutes later, Miller asked Huether what he had done after she noticed the sounds from the baby had become softer.  Huether told Miller he had moved the baby from his room to the baby's playpen in the other room where his other children were watching television.

Seven and one-half months prior to Becca's death, Coroner Montgomery investigated the death of Huether's seven-month-old son, Rick Huether (Rick).  Rick had died while in Huether's sole care.  Because no medical cause could be found for Rick's death, it was listed as Sudden Infant Death Syndrome (SIDS).  Due to Rick's SIDS-related death Becca's pediatrician had prescribed, as a precautionary measure, the use of an apnea monitor to monitor Becca's pulse and breathing.  Pursuant to the doctor's instruction, Becca was to wear the monitor whenever she might fall asleep.

Huether's statements to Coroner Montgomery and others regarding the use of Becca's apnea monitor included his admission to Coroner Montgomery that, even though an apnea monitor had been prescribed to monitor Becca's pulse and breathing, he had not placed it on her before putting her in her bassinet the day of her death.  Furthermore, a member of the SIDS support group to which Huether and Christina belonged informed sheriff's detectives that one hour after Becca's death Huether had left a message on her answering machine.  Huether's message stated: "Hi, . . . this is Ray Huether.  I believe you know me and my wife Christina; we are up at St. Vincent's, and Becca has passed away again. Thank you."  Additionally, when Christina received Huether's phone call at work informing her of Becca's situation,  he stated "you're not going to believe this," and informed her that Becca had not been on the monitor and had turned blue and that they were headed for the hospital.

In June of 1995, Huether was charged with negligent homicide for the death of his daughter Becca, in violation of  45-5-104, MCA.  Upon review of the evidence surrounding Becca's death indicating that Becca may have died as a result of

asphyxia or
suffocation, the State filed notice of intent to introduce evidence that, seven and one-half
months prior to Becca's death, Rick had died of SIDS while in Huether's care.  The State
contended that evidence of the circumstances surrounding Rick's death was relevant in
establishing knowledge and lack of mistake or accident concerning Becca's death.
Huether moved to exclude the evidence concerning Rick's death.  In a pretrial ruling, the
District Court held that the evidence of Rick's death was relevant in showing Huether's
knowledge and absence of mistake or accident.  Huether subsequently filed, and the
District Court denied, two motions to reconsider.

Following the District Court's order denying Huether's request to exclude
evidence of other crimes, Huether entered an Alford plea to the charge of negligent
homicide and reserved his right to appeal.  Huether appeals the District Court's order
denying his request to exclude evidence of other crimes, wrongs, or acts.


DISCUSSION

Did the District Court abuse its discretion in admitting evidence that
Huether's infant son had died while in his care seven months prior to the
death of his infant daughter?


The standard of review for an evidentiary ruling is whether the district court
abused its discretion.  State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257,
1263.  The determination of whether evidence is relevant and admissible is left to the
sound discretion of the trial judge and will not be overturned absent a showing of abuse
of discretion.  Gollehon, 864 P.2d at 1263.  See also State v. Stringer (1995), 271 Mont.
367, 374, 897 P.2d 1063, 1067.

Huether was charged with, and pled guilty to, the charge of negligent homicide,
a violation of  45-5-104(1), MCA.  Section 45-5-104(1), MCA, provides:
(1) A person commits the offense of negligent homicide if he negligently
causes the death of another human being.


Pursuant to  45-2-101(42), MCA, the term "negligently" is defined as:
"Negligently"--a person acts negligently with respect to a result or to a
circumstance described by a statute defining an offense when the person
consciously disregards a risk that the result will occur or that the
circumstance exists or when the person disregards a risk of which the
person should be aware that the result will occur or that the circumstance
exists. The risk must be of a nature and degree that to disregard it involves
a gross deviation from the standard of conduct that a reasonable person
would observe in the actor's situation. "Gross deviation" means a deviation
that is considerably greater than lack of ordinary care. Relevant terms, such
as "negligent" and "with negligence", have the same meaning.


In order to establish that Huether's involvement in the death of his daughter

Becca
constituted a gross deviation from ordinary care, the State proposed to introduce evidence that only seven months earlier, Huether's son Rick had died while in Huether's care as a result of SIDS. Huether contends that the District Court abused its discretion in determining that this evidence would be admissible at trial. Specifically, Huether maintains that evidence concerning Rick's death would be excessively prejudicial and violate the prohibition against evidence of þother crimes or actsþ set forth in Rule 404(b), M.R.Evid.

Specifically, Rule 404(b), M.R.Evid., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although the State and the District Court analyzed this issue in terms of Rule 404(b), M.R.Evid., we determine that this was a mischaracterization of the evidence being considered. In its "Notice of State's Intention to Use Evidence of Other Crimes, Wrongs or Acts," the State gave notice of intent to use the following evidence: "That on or about September 23, 1994, Rick Huether, seven-month-old infant son of the defendant RAY HUETHER, died while in the sole care of the defendant." In its brief arguing for the introduction of this evidence in the District Court, the State contended:

The circumstances of the death of Rick Huether were known to the defendant. Therefore he was aware of the circumstances of that death at the time of his actions at the time of the instant offense. His knowledge about the circumstances of the first death should be considered by the trier of fact in determining whether the defendant's actions in regard to Becca Huether were negligent. That is, a defendant having the knowledge the defendant had as a result of the death of Rick Huether should have been expected to act differently in his care of and action toward Rebecca Huether. Consequently, the trier of fact should know of the prior circumstance in order to judge the prudence of the defendant's actions on the day of Becca Huether's death.

Rule 404(b), M.R.Evid., pertains to "other crimes, wrongs or acts." If we look to the substance rather than the form of the State's "Just Notice" and brief, it is evident that the State was not alleging that Huether had engaged in any specific conduct concerning Rick nor was it proposing to prove that Huether had committed another crime, wrong or act with regard to the death of his son Rick. Rather, the State sought to introduce evidence of the circumstances surrounding Rick's death in order to show that, given Huether's knowledge of how Rick died, Huether should have been aware of the risk inherent in not

utilizing the apnea monitor on Becca and that his disregard of that risk constituted a gross deviation from ordinary care; that is, he was guilty of negligent homicide.

Although the court was wrong in holding the evidence admissible under Rule 404(b), it was, nonetheless, admissible. We affirm district court decisions which are correct regardless of the court's reasoning in reaching the decision. Clark v. Eagle Systems, Inc. (1996), 279 Mont. 279, 286, 927 P.2d 995, 999. The evidence of Rick's death must be analyzed, not in terms of Rule 404(b), M.R.Evid., but in terms of whether it was relevant circumstantial evidence.

In general, relevant evidence is admissible. Rule 402, M.R.Evid. Rule 401, M.R.Evid., defines relevant evidence as, þevidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.þ See State v. Rendon (1995), 273 Mont. 303, 307, 903 P.2d 183, 185-86. In the instant case, evidence concerning Rickþs death was to be introduced to show that, based on his prior experience with his son Rick, Huether was aware that an infant, if not properly attached to an apnea monitor, as prescribed by the infant's doctor, could die from asphyxiation. The evidence at issue was proposed, not as character evidence, but to show that Huether was aware of the consequences of failing to attach an apnea monitor as prescribed by the child's physician. Evidence of the circumstances surrounding Rick's death had the effect of demonstrating that Huether, in caring for Becca, consciously disregarded a risk of which he should have been aware. Evidence of Rickþs death was thus relevant to the question of whether Huether þnegligentlyþ caused the death of Becca in violation of   45-5-104 (1), MCA.

Huether also contends that the relevancy of the evidence is outweighed by its prejudicial effect. In State v. Thompson (1993), 263 Mont. 17, 865 P.2d 1125, we discussed the balancing of probative value and unfair prejudice under Rule 403, M.R.Evid. We noted that the danger from unfairly prejudicial evidence is that the evidence will prompt the jury to decide the case on an improper basis:

Unfair prejudice can arise from [evidence] that arouse[s] the jury's hostility or sympathy for one side without regard to its probative value, evidence that confuses or misleads the trier of fact, or evidence that might unduly district the jury from the main issues.

Thompson, 865 P.2d at 1132 (citing 1 J. Strong, McCormick on Evidence,   185 (4th ed. 1992)).

In the present matter, the District Court, relying on State v. Paulson (1991), 250 Mont. 32, 43, 817 P.2d 1137, 1142, held that " 'mere prejudicial effect is not a sufficient reason to refuse admission. Probative evidence will frequently be prejudicial to a party,

but that does not mean that it will cause the fact finder to ground a decision on an emotional basis.' "

We agree with the court's analysis.  The circumstances surrounding Rick's death are highly probative of Huether's awareness of the risks involved in not complying with Becca's doctor's prescription of an apnea monitor.  This evidence is pivotal to proving the State's allegation that Huether's conduct was more than a simple lack of ordinary care; that he was guilty of a gross deviation from the standard of conduct that a reasonable person would observe under like circumstances.  Section 45-2-101(42), MCA (negligently defined).  As with all evidence proffered by the prosecution, the evidence is prejudicial.  However, it is not unfairly so.  Its probative value clearly outweighs the prejudicial effect.

Since we hold that the evidence of Rick's death was not Rule 404(b) "other crimes" or character evidence but was relevant circumstantial evidence, the State was not required to comply with the notice procedures set forth in State v. Just (1979), 184 Mont. 262, 602 P.2d 957, and thus the adequacy of the "Just Notice" is not an issue that needs to be resolved.  Accordingly, we affirm the District Court's denial of Huether's motion to exclude the evidence of the circumstances surrounding Rick's death.

/S/  W. WILLIAM LEAPHART


We concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER
/S/  KARLA M. GRAY