No. 96-534

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WAYNE PARTIN,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
Honorable Russell Fagg, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Patricia Jordan.,
Assistant Attorney General, Helena, Montana

Dennis Paxinos County Attorney; Billings, Montana

Submitted on Briefs: July 2, 1997

Decided: December 30, 1997

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Wayne Partin (Partin) appeals from the judgment and commitment entered by the Thirteenth Judicial District Court, Yellowstone County, on a jury verdict finding him guilty of the felony offense of forgery.  Specifically, he appeals from the District Court's denial of his motion for a mistrial following testimony which violated an order in limine.

We reverse and remand for a new trial.

The issue on appeal is whether the District Court abused its discretion in denying Partin's motion for a mistrial.

BACKGROUND

The State of Montana (State) charged Partin with committing the offense of forgery by allegedly altering the payee line of a check to include his name, signing the back of the check, and cashing it.  Prior to trial, Partin's counsel orally moved the District Court in limine to exclude expected testimony from the State regarding other crimes or acts based on the State's failure to provide Partin with a Just notice of intent to use such evidence.  In particular, the motion sought to preclude any reference to the fact that certain handwriting samples were on file at the Billings Police Department due to a prior arrest of Partin.  The State did not oppose the motion and, indeed, assured the District Court it did not intend to go into Partin's criminal history or record.  The prosecutor also stated that she had spoken to Detective Dave Comfort, the State's handwriting expert, about avoiding any mention of Partin's prior arrest during his testimony comparing the writing on the check at issue to prior handwriting samples from Partin, and that she would stop him should he begin to verge into such "prior crimes" testimony.  The District Court granted the motion in limine.

At trial, Ron Hill (Hill) testified that he had written, and mailed, the check at issue to AAA Drywall in September of 1995.  He further testified that the payee line of the check had been altered to include "/W. Partin."  He stated that, in response to notification by AAA Drywall that it had not received the check, he called the bank to stop payment on the check and was informed that the check had already been cashed.

The bank teller who cashed the check testified that she did not remember the transaction, but that her teller stamp on the check indicated she had cashed it on September 9, 1995.  She also had written a social security number on the check, reflecting that she had seen some form of identification containing the customer's social security number and signature.  According to the teller, the identification may have been, but was not necessarily, a driver's license.

After being qualified as an expert in handwriting analysis, Detective Comfort testified that he had compared both the added writing on the payee line and the signature on the back of the check with several handwriting samples provided by Partin, two of which had been admitted into evidence.  The State then asked Detective Comfort to identify the source of other handwriting samples he had used for his analysis and he responded that they were fingerprint cards from Partinþs previous arrest.

Defense counsel objected and moved for a mistrial on the grounds that Detective Comfortþs statement regarding the prior arrest violated the District Courtþs grant of the motion in limine and constituted other crimes evidence.  Out of the juryþs presence, the State contended that evidence of a prior arrest was not, technically, other crimes evidence.  The prosecutor urged that a cautionary instruction would correct any error because the jury þwonþt necessarily be biased against the defendant just by the fact [Detective Comfort] mentioned [Partin] was arrested in the past.þ  The District Court expressed disappointment with Detective Comfortþs testimony and ascribed it to nervousness.  The  court subsequently gave a cautionary instruction admonishing the jury to consider only the facts and not prior crimes allegedly committed, and that Detective Comfort should not have testified that there had been a prior arrest of Partin.

The trial continued and Detective Comfort ultimately opined that it was probable that Partin altered the front of the check.  He also testified that it was highly probable that Partin endorsed the back of the check.

Partin then testified on his own behalf, denying that he altered the front, or signed the back, of the check.   He testified that his roommate had stolen various items, including his wallet, from his house in August of 1995, and that his driverþs license, and perhaps his social security card, were in the wallet.  This theft was reported to the police.

The jury found Partin guilty of the offense of forgery, a felony, and the District Court subsequently sentenced him and entered judgment.  Partin appeals from the denial of his motion for a mistrial.

STANDARDS REGARDING MISTRIAL MOTIONS

We recently clarified the standard to be applied by a district court in determining whether to grant a motion for a mistrial.  Observing that we had not consistently stated that standard in earlier cases, we held that a district court should grant a motion for a mistrial þwhen there is either a demonstration of a manifest necessity, or where the defendant has been denied a fair and impartial trial.þ  State v. Ford (1996), 278 Mont. 353, 359-60, 926 P.2d 245, 249; see also State v. Walker (1996), 280 Mont. 346, 352, 930 P.2d 60, 63-64; and State v. Romero (1996), 279 Mont. 58, 75, 926 P.2d 717, 728.

We have not previously determined when a district court should apply the manifest

necessity standard as opposed to the denial of a fair and impartial trial standard. That subissue was addressed, however, in a special concurring opinion in Romero, 926 P.2d at 730 (Leaphart, J., concurring), in which three other justices joined.

Justice Leaphart noted, at the outset, that United States v. Perez (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165-66, was the source of the manifest necessity component of the standard and that, in Perez, the mistrial was declared by the court, not requested by the defendant. Romero, 926 P.2d at 730. He observed that, in United States v. Dinitz (1976), 424 U.S. 600, 606-607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273, the United States Supreme Court limited the application of the manifest necessity standard to situations where a court declares a mistrial without the consent of the defendant. The rationale for limiting application of the heightened manifest necessity standard is that double jeopardy implications arise in the context of a mistrial declared without the defendantþs request or consent. Romero, 926 P.2d at 730-31.

In the context of a defendantþs motion for a mistrial, however, Justice Leaphart relied on Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, in reasoning that double jeopardy considerations do not arise when a defendant has chosen to terminate the proceedings against him. Romero, 926 P.2d at 730-31. Thus, Justice Leaphart concluded that, where the defendant moves for a mistrial, the þmotion should be granted where the ends of public justice so require or where the defendant will be denied a fair and impartial trial.þ Romero, 926 P.2d at 731. Other courts are in accord with Justice Leaphartþs reasoning, applying the manifest necessity standard when the trial court declares a mistrial without the defendantþs consent and the denial of a fair trial standard when the defendant moves for a mistrial. See, e.g., State v. Ardolino (Me. 1997), 697 A.2d 73, 79; State v. Friel (Me. 1985), 500 A.2d 631, 634; Smith v. State (Ga. 1994), 439 S.E.2d 483, 485; Byrd v. State (Ga. 1992), 420 S.E.2d 748, 749; State v. Sonen (S.D. 1992), 492 N.W.2d 303, 306; State v. Delfs (S.D. 1986), 396 N.W.2d 749, 751.

We adopt the rationale set forth in Justice Leaphartþs special concurring opinion in Romero and conclude that the more stringent manifest necessity standard applies when a trial court considers declaring a mistrial without the defendantþs request or consent. We further conclude that the denial of a fair and impartial trial standard applies when a trial court determines whether to grant a mistrial either moved forþor consented toþby the defendant. Thus, the fair and impartial trial standard applies to the District Courtþs ruling on Partinþs motion for a mistrial based on inadmissible testimony which violated the order in limine.

96-534

With regard to this Court's standard of review of a district court's ruling on a motion for a mistrial, the parties advance different positions based on two separate lines of authority. The State relies on recent language in Ford, 926 P.2d at 248-49 (citing State v. Greytak (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098)—reiterated in Walker, 930 P.2d at 63, and Romero, 926 P.2d at 728—that, in reviewing a trial court's ruling on a motion for a mistrial, we determine whether there is clear and convincing evidence that the court's ruling is erroneous. In contrast, Partin urges us to apply the standard of review set forth in State v. Seaman (1989), 236 Mont. 466, 475, 771 P.2d 950, 956 (citing State v. Scheffelman (1987), 225 Mont. 408, 411, 733 P.2d 348, 350), which is whether the district court abused its discretion in denying the motion. Thus, before addressing the merits of the present appeal, we must resolve the threshold issue of our standard of review.

The problem with the Ford standard—whether there is clear and convincing evidence that the trial court's ruling is erroneous—is that clear and convincing evidence is an evidentiary standard. Indeed, we recently defined clear and convincing evidence as:

"[c]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt."

Matter of J.L. (1996), 277 Mont. 284, 289, 922 P.2d 459, 462 (quoting In Interest of S.M.Q. (Kan. 1990), 796 P.2d 543, 545); see also Wareing v. Schreckendgust (1996), 280 Mont. 196, 206, 930 P.2d 37, 43 (citation omitted). Such an evidentiary standard relating to a party's burden of proof in the district court is not a proper standard for this Court's review of a district court's ruling on a motion for a mistrial. As a result, we will no longer use the "clear and convincing evidence that the trial court's ruling is erroneous" standard of review applied in Ford, Walker, Romero, and earlier cases. In accordance with the Seaman and Scheffelman line of cases, we will review a district court's ruling on a motion for a mistrial to determine whether the court abused its discretion.

## DISCUSSION

Did the District Court abuse its discretion in denying Partin's motion for a mistrial?

It is undisputed in this case that Detective Comfort's reference to fingerprint cards from Partin's prior arrest as the source of handwriting samples violated the District Court's order in limine and, therefore, was inadmissible. Partin moved for a mistrial,

arguing that the testimony had such a prejudicial impact that a cautionary jury instruction could not cure the error. The State contended that Detective Comfortþs reference to the prior arrest did not necessarily indicate a prior conviction and that a cautionary jury instruction was sufficient to cure any error. The District Court denied Partinþs motion and the question before us is whether, under the facts and circumstances of this case, the court abused its discretion in determining that Detective Comfortþs reference to Partinþs prior arrest did not deny Partin a fair and impartial trial.

The general rule is that, where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate. See Walker, 930 P.2d at 64 (citations omitted). In determining whether a prohibited statement contributed to a conviction, the strength of the evidence against the defendantþtogether with the prejudicial effect of the testimony and whether a cautionary jury instruction could cure any prejudiceþmust be considered. See Walker, 930 P.2d at 63-64; Ford, 926 P.2d at 249.

We begin by addressing the strength of the evidence against Partin in the context of whether there is a reasonable possibility that Detective Comfortþs reference to a prior arrest might have contributed to Partinþs conviction. No eyewitnesses tied Partin to the offense. Although Hill testified that the check had been altered and the bank teller testified that she cashed the check, neither one could identify Partin or link him to the check. Therefore, Detective Comfortþs testimony regarding the handwriting analysis he performed was the only link between Partin and the offense.

On direct examination, Detective Comfort testified to the consistencies between the handwriting samples and the writing on the check and concluded that, in his opinion, it was probable that Partin altered the payee line of the check and highly probable that Partin signed the back of it. He further testified that he uses a six-step grading scale which ranges from a positive match downward through a high probability, a probability, a possibility, and some indications to no indications of a match. Therefore, Detective Comfort was able to assign only the second highest grade to the results of his analysis of the endorsement on the back of the check. He also testified that his analysis indicated

that Partin's signature was "consistent with the writing on the back of the check" before going on to testify that it was "highly probable" that Partin had endorsed the check.

During cross-examination, various inconsistencies between the handwriting samples and the writing on the check were pointed out. The inconsistencies included the fact that the signature on the handwriting samples turned into a straight line, while the signature on the check turned into a "squiggly" line. In addition, the handwriting samples all contained an "a" that was absent from the signature on the back of the check. Indeed, Detective Comfort testified that it was possible someone else could have endorsed the check.

After the close of the State's case, Partin testified on his own behalf that he did not steal the check, alter the payee line, or endorse the back and cash it. He also testified that his roommate had stolen his wallet—which contained his driver's license and possibly his social security card—and that he reported the theft to the police.

The lack of eyewitness testimony connecting Partin to the check in any way, together with Detective Comfort's handwriting analysis producing a less than positive match, result in evidence against Partin which is far short of being overwhelming. Furthermore, the inconsistencies in Detective Comfort's analysis and the other weaknesses in his results were effectively highlighted during cross-examination. Finally, Partin testified that he did not forge the check and advanced an alternative explanation which was not inherently incredible. Overall then, the evidence against Partin was conflicting and relatively weak.

The prejudicial effect of Detective Comfort's reference to Partin's prior arrest must also be considered. See Walker, 930 P.2d at 64. In this regard, we have recognized that

the introduction of other crimes evidence inevitably involves prejudice to the defendant.

State v. Anderson (1996), 275 Mont. 344, 349, 912 P.2d 801, 804 (citation omitted). Indeed, such evidence is introduced by the prosecution for the very purpose of prejudicing the defendant. The State argues, however, that a prior arrest is not technically other crimes evidence and, therefore, reference to a prior arrest will not necessarily result in prejudice to the defendant.

We have stated, without analysis, that testimony about the existence of a pending charge in another state is not other crimes evidence. Ford, 926 P.2d at 249. We also have held that an officer's statement that he recognized the defendant from past forgery investigations was other crimes evidence requiring a Just notice. Walker, 930 P.2d at 64.

Finally, we have determined that Just does not apply to testimony regarding other

96-534

wrong
acts when the testimony was inadvertent because the prosecution did not intend to offer
such evidence. State v. Brush (1987), 228 Mont. 247, 250, 741 P.2d 1333, 1335. We need not resolve this apparent conflict in our cases here, however, for two reasons.
First, if the State desired to take the position that the prior arrest was not other
crimes evidence, it should have done so in response to Partin's pretrial motion in limine
to preclude reference to a prior arrest. It not only did not do so, it acquiesced in the
motion. Then, having elicited the very testimony it agreed was inadmissible, the prosecutor responded to Partin's motion for a mistrial by arguing the purported distinction
between other crimes evidence and testimony referencing only a prior arrest. The State
repeats that argument on appeal, but we will not countenance such position-shifting by
addressing that argument here.

Second, regardless of whether Detective Comfort's reference to Partin's prior arrest is other crimes evidence under Just and Rule 404(b), M.R.Evid., testimony that a defendant has been arrested on a prior occasion is inherently prejudicial. If it were not,
there would be no reason for a motion in limine to preclude such evidence. Further, the
prosecutor's acquiescence in and the District Court's grant of the motion in limine in
this case reflect that all involved conceded the prejudicial effect of evidence that Partin
had been arrested on a prior occasion. This is especially true when, as in this case, the
only evidence directly linking Partin to the check at issue is the testimony of the very
officer who also disclosed the previous arrest, and the only defense witness is the defendant. Under such circumstances, the reference to the prior arrest may have buttressed the officer's other testimony and, at the same time, impugned the defendant's
credibility and character. On this record, we conclude that Detective Comfort's reference
to Partin's prior arrest was prejudicial.

Regarding the extent of the prejudice, the State argues that Detective Comfort's reference to Partin's prior arrest is no more prejudicial than the officer's reference to
other charges pending against the defendant in Ford. Because we determined that reference had only a slight prejudicial effect and affirmed the denial of that defendant's
motion for a mistrial, the State contends we should do the same in the present case.

In Ford, the victim testified that Ford had sexually assaulted him and that, when
confronted the next day, Ford admitted what he had done. Ford, 926 P.2d at 246-47.
The victim's cousin and uncle provided similar descriptions of the confrontation between

the victim and Ford.  Ford, 926 P.2d at 247.  The investigating officer testified that, before he searched Fordþs residence, he asked for consent to search and told Ford that there were charges pending in another state.  Ford, 926 P.2d at 247.  The defendant objected  and the trial court overruled the objection.  The defendant subsequently moved for a mistrial; the trial court denied the motion, but gave a cautionary instruction.  Ford, 926 P.2d at 247.  On that record, we determined that the reference to other pending charges had little, if any, prejudicial effect.  Ford, 926 P.2d at 249.

In Ford, the evidence against the defendant was very strong.  Here, as discussed above, the evidence against Partin was weak and conflicting.  There were no eyewitnesses to any involvement by Partin with the check at issue.  Nor was there testimony corroborating Detective Comfortþs opinion that the writing on the check was Partinþs and, as discussed above, the weaknesses in Detective Comfortþs handwriting analysis and opinion were highlighted effectively during cross-examination.  Since the stronger the evidence against the defendant, the less likely it is that a reference to other charges or a prior arrest will have a prejudicial effect, we conclude that the reference to Partinþs prior arrest had a greater prejudicial effect than the reference to other charges in Ford.

Finally, we turn to the question of whether the District Courtþs cautionary instruction could cure the prejudicial effect of Detective Comfortþs reference to Partinþs prior arrest.  Generally, þan error in the admission of evidence may be cured if the jury is admonished to disregard it.þ  Walker, 930 P.2d at 64 (citations omitted).  A general rule is not carved in stone, however, and if this one were, every improper introduction of evidenceþno matter how egregious and prejudicial and without regard to any pretrial exclusionþcould and would be cured by a cautionary instruction.  Where the question before us boils down to whether there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, we must evaluate the applicability of the general rule regarding curative instructions carefully.

In Walker, another felony forgery case, an officer referenced past forgery investigations involving the defendant at a point during trial when another officer had testified that three bank employees identified the defendant in a photo line-up.  Walker, 930 P.2d at 64.  In addition, the three bank employees provided in-court identifications of the defendant.  Walker, 930 P.2d at 64.  The defendant objected to the reference to the past forgery investigations and, during the ensuing discussion in chambers, moved for

a mistrial. The prosecutor admitted that no Just notice had been given. Walker, 930 P.2d at 63. The district court denied the motion for a mistrial and admonished the jury not to consider the reference to past investigations. Walker, 930 P.2d at 63. We determined on appeal that, in light of all the evidence presented and the prompt cautionary instruction, the officerþs reference to past forgery investigations did not contribute to the conviction; in doing so, we implicitly concluded that any prejudice from the improper testimony was cured by the instruction. Walker, 930 P.2d at 64.

Clearly, the admonition to the jury in Walker was not the only factor we considered in determining that the prejudicial effect of the reference to past investigations had been overcome. The strong evidence against the defendantþincluding that of three eyewitnessesþwas an important underpinning for our conclusion that the prejudice was cured. See Walker, 930 P.2d at 64. Here, unlike in Walker, the evidence was weak and conflicting and no eyewitnesses tied Partin to the check at issue. Furthermore, in Walker the reference to the other charges did not violate a pretrial order excluding such testimony. In this case, the reference to Partinþs prior arrest violated the District Courtþs order in limine to which the State had agreed. Under such a circumstance, and given the status of the evidence, resolving any doubt about the efficacy of the cautionary instruction in favor of the prosecution would be inappropriate. As a result, we conclude that the cautionary instruction did not overcome the prejudicial effect of Detective Comfortþs reference to Partinþs prior arrest.

Based on the record before us here, we conclude that there is a reasonable possibility that Detective Comfortþs reference to Partinþs prior arrest might have contributed to Partinþs conviction and, as a result, that Partin was denied a fair and impartial trial. We hold, therefore, that the District Court abused its discretion in denying Partinþs motion for a mistrial.

Reversed and remanded for a new trial.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.
/S/ TERRY N. TRIEWEILER