No. 04-011

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 197

DEBORAH JEAN GARRETT,
f/k/a DEBORAH JEAN WHITE,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    The District Court of the Ninth Judicial District,
                    In and For the County of Pondera, Cause No. DC 97-019,
                    Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kenneth R. Olson, Attorney at Law, Great Falls, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Mark Mattioli,
        Assistant Attorney General, Helena, Montana

        Chris Christensen, County Attorney, Conrad, Montana

        Submitted on Briefs:  August 25, 2004

        Decided:  August 16, 2005

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Deborah Jean Garrett (Garrett) appeals from the order entered by the Ninth Judicial District Court, Pondera County, denying her petition for postconviction relief.  We affirm.

¶2      We address the following issues on appeal:

¶3      Did the District Court err in denying Garrett's postconviction relief petition, alleging that her trial counsel rendered ineffective assistance by:

(a) Lack of preparation and deficient presentation;

(b) Failure to make timely hearsay objections;

(c) Failure to obtain a defense expert;

(d) Failure to offer adequate jury instructions;

(e) Failure to assert affirmative defenses; and

(f) Failure to call witnesses.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4      On December 16, 1997, the State filed an Information charging Garrett with three counts of felony forgery in violation of § 45-6-325(1)(a) and (b), MCA.  The State alleged that Garrett altered two checks received by her former employer, Chester Brown (Brown), while Garrett was employed by Brown as a live-in housekeeper.  One check had been altered from $50 to $5,000 and the other from $100 to $100,000.  The State also alleged that Garrett had forged Brown's signature on an account transfer slip which caused $100,000 to be transferred from Brown's saving account to his checking account with Norwest Bank in Great Falls, Montana.

¶5      Garrett entered not guilty pleas to the charges, and a jury trial ensued on October 13, 1998. The jury found Garrett guilty of all three forgery counts. On November 30, 1998, Garrett was sentenced to three concurrent ten-year sentences, with eight years suspended on each.

¶6      Garrett appealed to this Court, asserting that her trial counsel, Joseph Gilligan (Gilligan), had rendered ineffective assistance of counsel. This Court determined that the ineffective assistance of counsel issues raised in the appeal involved non-record factual issues and dismissed the appeal on August 9, 2001, without prejudice to the filing of a petition for postconviction relief. *State v. White*, 2001 MT 149, ¶¶ 30-31, 306 Mont. 58, ¶¶ 30-31, 30 P.3d 340, ¶¶ 30-31.

¶7      On September 4, 2001, Garrett filed a petition for postconviction relief. The State responded by requesting a summary dismissal of the petition, which was denied by the District Court on December 11, 2002. On July 14, 2003, an evidentiary hearing on the petition was held wherein both Garrett and Gilligan testified.

¶8      On September 29, 2003, the District Court denied Garrett's petition for postconviction relief. Garrett appeals.

## STANDARD OF REVIEW

¶9      Claims of ineffective assistance of counsel are mixed questions of law and fact, and are therefore reviewed *de novo*. *State v. Lucero*, 2004 MT 248, ¶ 12, 323 Mont. 42, ¶ 12, 97 P.3d 1106, ¶ 12. Ineffective assistance of counsel claims are analyzed under the two-prong test adopted from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80

3

L.Ed.2d 674, which includes: (1) that the defendant bears the burden of showing that his counsel's performance was deficient or fell below the objective standard of reasonableness; and (2) the defendant must show that he was prejudiced by counsel's deficient performance. *Lucero*, ¶ 15. We note that there is a "strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Weldele*, 2003 MT 117, ¶ 70, 315 Mont. 452, ¶ 70, 69 P.3d 1162, ¶ 70 (citations omitted).

¶10    We review a district court's denial of a petition for postconviction relief by determining whether the findings of fact are clearly erroneous and whether conclusions of law are correct. *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, ¶ 7, 74 P.3d 1047, ¶ 7. A petitioner seeking to reverse a district court's denial of a petition for postconviction relief "bears a heavy burden." *State v. Cobell*, 2004 MT 46, ¶ 14, 320 Mont. 122, ¶ 14, 86 P.3d 20, ¶ 14.

## DISCUSSION

¶11    **Did the District Court err in denying Garrett's postconviction relief petition, alleging that her trial counsel rendered ineffective assistance by:**

¶12    **(a) Lack of preparation and deficient presentation.**

¶13    The defense theory offered by Gilligan at trial was that the checks had been altered, but that Brown had authorized the alterations. Garrett argues that Gilligan failed to effectuate this defense theory because he made several pre-trial and trial errors, including failing to: (1) carefully investigate and analyze the facts; (2) establish a theory for the

4

defense; and (3) make an opening statement. Garrett asserts that the defense theory was not "judiciously repeated" or properly developed during voir dire, opening statement, witness examination and summation.

¶14    The State first notes that Gilligan has over twenty years experience as a criminal defense attorney, and that his decisions regarding trial presentation were made pursuant to and consistent with a strategy designed to show that Brown authorized the alterations. The State offers that Gilligan furthered the defense theory by at least previewing the theory with the jury in voir dire, by proposing jury instructions covering agency principles, challenging the circumstances under which Brown signed forgery affidavits for his bank, and by furthering the theory in closing argument. Moreover, the State offers that Gilligan prepared an opening statement, but, for strategic reasons, decided to reserve the statement, opting to respond to the prosecution's opening statement in his closing argument.

¶15    This Court has previously concluded that "[t]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not form the basis for a claim of ineffective assistance of counsel." *Dawson v. State*, 2000 MT 219, ¶ 99, 301 Mont. 135, ¶ 99, 10 P.3d 49, ¶ 99. Further, we conclude from the record that Gilligan's theory of defense was communicated to the jury throughout his trial presentation. As such, his assistance did not fall "below the objective standard of reasonableness" required to establish ineffective assistance of counsel. *Lucero*, ¶ 15. Because Garrett failed to meet the first prong of the *Strickland* test, we need not address the

5

second prong. *State v. Osterloth*, 2000 MT 129, ¶ 33, 299 Mont. 517, ¶ 33, 1 P.3d 946, ¶ 33.

¶16    **(b) Failure to make timely hearsay objections.**

¶17    On day two of Garrett's trial, the State moved for admission of its proposed exhibits 7, 8, and 9–three forgery affidavits which Brown's bank required that he execute to obtain reimbursement. The State called witnesses to describe the contents of the exhibits, which testimony included Brown's statements about the exhibits, because Brown had died prior to trial. Garrett argues that this foundational hearsay testimony was "particularly damning," and that Gilligan failed to: (1) timely object on the basis of hearsay to prevent Brown's words and reactions from being discussed; (2) perpetuate Brown's testimony prior to trial through a deposition, even though he knew Brown was terminally ill; (3) interview or depose any of the State's witnesses before trial, even though discovery revealed the potential subject of their testimony; and (4) research the law regarding hearsay statements from decedent witnesses prior to trial, a failure Garrett contends resulted in a violation of Garrett's constitutional right to confront witnesses. Thus, Garrett argues that Gilligan's decisions were made on the basis of "neglect and ignorance," violating *Strickland*.

¶18    The State replies that Gilligan sought to undermine the prosecution's efforts to lay a foundation for the forgery affidavits. The State explains that Gilligan established, through cross-examination of one of the witnesses, that the witness never saw Brown sign the affidavits, that they were merely form documents, and that Brown needed to execute them to get the money back from the bank. Further, the State notes that Gilligan's objection to

6

admission of the affidavits was ultimately granted on the grounds that the affidavits violated Garrett's constitutional right of confrontation. The State also offers that the District Court's decision to allow testimony from witnesses as to Brown's excited utterances in connection with the forgery affidavits was not prejudicial because it was cumulative.

¶19 This Court has previously held that "decisions regarding the timing and number of objections lie within counsel's tactical discretion." *Watson v. State,* 2002 MT 329, ¶ 22, 313 Mont. 209, ¶ 22, 61 P.3d 759, ¶ 22. Though he may not have handled the issue in the manner which Garrett now believes was preferable, it is clear that Gilligan made objection on the basis of hearsay regarding the forgery affidavits. Gilligan's objection succeeded in convincing the District Court to exclude the affidavits and give a cautionary instruction to the jury that it should ignore testimony regarding the contents of exhibits 7, 8, and 9. Because such objections involve strategic decisions on the basis of counsel's discretion, we will not analyze whether such decisions were, in hindsight, reasonable, or whether they were sufficient in number. Thus, we conclude that Gilligan's performance did not fall "below the objective standard of reasonableness" required to establish ineffective assistance of counsel. *Lucero*, ¶ 15.

¶20 **(c) Failure to obtain a defense expert.**

¶21 Garrett argues that Gilligan's representation was ineffective because he failed to retain a handwriting expert for the defense. Garrett notes that she urged Gilligan to hire a defense expert and offered to advance $1,500 to obtain one. Garrett also asserts that Gilligan failed to interview the State's handwriting expert Beverly Medved (Medved). Garrett contends that

7

Gilligan's cross-examination was "not effective enough" to undermine Medved's opinion, which prejudiced the outcome of the trial. The State replies that Gilligan prepared for Medved's testimony based upon Medved's written report, anticipated her testimony, and effectively cross-examined Medved at trial by limiting the scope of her testimony to certain exhibits.

¶22 In her civil deposition, Garrett admitted to making alterations to the documents at issue, and she did not deny that alterations were made in her criminal trial. Thus, both sides acknowledged the alterations by Garrett, and, therefore, a handwriting expert was not needed to establish that Garrett had not altered the documents. Moreover, there is no evidence in the record to suggest that Gilligan could have engaged an expert with contrary opinions to the State's expert. Consequently, we conclude that it is not established that Gilligan's performance fell "below the objective standard of reasonableness." *Lucero*, ¶ 15.

¶23 **(d) Failure to offer adequate jury instructions.**

¶24 Garrett argues that Gilligan's proposed jury instructions were insufficient because Gilligan did not offer a "theory of the case" instruction and failed to request instructions related to possible affirmative defenses. Garrett argues that Gilligan's performance in this regard was ineffective pursuant to this Court's holding in *State v. Rogers*, 2001 MT 165, 306 Mont. 130, 32 P.3d 724, wherein we held that the "failure to offer [a] potentially beneficial instruction, when that failure is not part of counsel's trial strategy, is an error so serious that it falls outside the range of competence required of attorneys in criminal cases." *Rogers*, ¶ 13.

¶25    The State responds that Gilligan submitted ten proposed jury instructions, including three instructions on agency, which were tailored to the theory of the defense. Of the ten instructions Gilligan requested, five were given by the District Court, including all three agency instructions. The State contends that Garrett's reliance on *Rogers* is misplaced because, in contrast to the defense counsel in *Rogers*, Gilligan consciously and tactically chose to offer instructions adapted to the theory of the defense.

¶26    This Court will not "second guess tactical decisions made by defense counsel." *State v. Weaver*, 2001 MT 115, ¶ 12, 305 Mont. 315, ¶ 12, 28 P.3d 451, ¶ 12. Gilligan offered ten proposed jury instructions, including those which furthered the chosen defense theory. Thus, we conclude that Gilligan's performance was well within strategical parameters and did not fall below an "objective standard of reasonableness." *Lucero*, ¶ 15.

¶27    **(e) Failure to assert affirmative defenses.**

¶28    Garrett argues that her trial counsel failed to assert affirmative or statutory defenses, specifically mentioning one–the defense of consent, pursuant to § 45-2-211(1), MCA.[1] Garrett asserts that because the two altered checks were intended as gifts and that Brown instructed her to alter the checks to reflect larger amounts, she acted with his consent. Garrett argues that Gilligan failed to assert this affirmative defense, which constituted deficient representation.

---

[1] "The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense." Section 45-2-211(1), MCA.

9

¶29    The State responds that the defense's theory was not that Brown consented to the forgeries, but that no forgeries occurred. That is, the State explains that, in order to convict Garrett of forgery, it had to prove that she acted "without authority" when she altered or delivered documents "with [the] purpose to defraud" Brown. Section 45-6-325(1)(a) and (b), MCA. Thus, the State argues that Gilligan's proposed jury instructions regarding certain agency principles adequately presented the defense that Garrett, acting as Brown's agent, altered the documents with Brown's authority.

¶30    As mentioned, this Court will not second guess trial tactics and strategy. *Weaver*, ¶ 12. Though Garrett may now object to Gilligan's method or approach, the theory that Garrett had acted with Brown's approval was furthered by Gilligan throughout the trial. We cannot conclude that a failure to offer a "consent" defense instead of or in addition to Gilligan's other efforts under such circumstances fell below an "objective standard of reasonableness." *Lucero*, ¶ 15.

¶31    **(f) Failure to call witnesses.**

¶32    Garrett testified at the postconviction evidentiary hearing that she had wanted to testify in her defense at the criminal trial, but that Gilligan told her it was not in her best interest to testify. She claimed she was angry over this issue, but followed Gilligan's advice. Garrett also claimed that Vernon Sumner (Sumner), who had lived with Garrett and Brown for a month or so, witnessed Brown creating the $100,000 check and withdrawal slip and had told Gilligan he was willing to testify. However, Gilligan did not call either as a witness, which Garrett contends was critical to an effective defense, and did not interview any other potential defense witnesses, and, therefore, did not put on a case-in-chief.

10

¶33 Contrary to Garrett's version of events, Gilligan testified at the postconviction hearing that he discussed with Garrett her right to testify in the criminal trial, but that she refused to testify. Gilligan also explained that he chose not to call Sumner as a defense witness because Garrett decided she did not want Sumner to testify and, further, that Gilligan had concerns regarding Sumner's effectiveness as a witness, due to memory problems. About these factual disputes, Garrett argues that "[i]t is not credible to believe that [she] would refuse to testify when her testimony was so critical to her defense."

¶34 The State notes the testimony that Gilligan had several conversations with Garrett regarding her anticipated testimony; however, after the prosecution rested its case, Garrett informed Gilligan that she did not want to testify. Moreover, Garrett was unable to provide Gilligan with names of any possible defense witnesses who had personal knowledge about Brown's inclination of gifting $105,000 to Garrett, with exception of one, Sumner, and there was evidence that both Garrett and Gilligan had agreed that Sumner would not make a good witness. Even though Garrett contends she was adamant about testifying and that Gilligan did not let her do so, the State argues that Gilligan's testimony was a sufficient basis for the District Court to reject Garrett's contention. The State argues that Garrett lacked credibility, which explains her "outrageous" accusations against Gilligan, and that the District Court properly accepted Gilligan's testimony explaining his actions and inactions during trial.

¶35 "The weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact." *State v. Pitzer*, 2002 MT 82, ¶ 13, 309 Mont. 285, ¶ 13, 46 P.3d 582, ¶ 13. Garrett's version of the events at trial was implicitly rejected in favor of

Gilligan's version by the District Court, which concluded that "[c]onsideration of the testimony of Joseph Gilligan at the July 14 hearing, answering the why of his actions or inaction" was sufficient to reject Garrett's claims as failing to "rebut the 'strong presumption' that Joseph Gilligan rendered adequate assistance to Defendant and made all decisions 'in the exercise of reasonable professional judgment.'" Though the District Court did not enter a finding on this specific factual contention, this Court relies upon, in postconviction matters, the "doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *State v. Wright*, 2001 MT 282, ¶ 9, 307 Mont. 349, ¶ 9, 42 P.3d 753, ¶ 9. The District Court, after reviewing the trial court record, determined that Gilligan adequately answered and explained his actions and inactions in light of the claims against his representation and denied Garrett's petition. We conclude that Gilligan's decisions regarding potential witnesses did not fall below an objective standard of reasonableness required to find ineffective assistance of counsel. *Lucero*, ¶ 15.

¶36 We conclude that the District Court's findings were not clearly erroneous and its conclusions of law were correct. Affirmed.


/S/ JIM RICE


We Concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER