FILED

February 1 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 20

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

SUSAN MINER,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DC 10-383 Honorable Karen Townsend, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Joseph P. Howard, P.C., Great Falls, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant Attorney General, Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  January 4, 2012

Decided:  February 1, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Susan Miner appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, upon her conviction of the offense of assault on a peace officer, a felony, in violation of § 45-5-210, MCA.  We affirm.

## BACKGROUND

¶2      On August 10, 2010, Missoula City Police Officer Kurt Trowbridge was dispatched to investigate a reported trespass at the corner of East Pine Street and Madison Street.  When Trowbridge arrived, the resident complainant said a female had been at the complainant's residence and would not leave when asked.  While Trowbridge and the complainant were talking, Miner drove by and the complainant identified her as the suspect.  Trowbridge immediately entered his patrol car and pursued Miner, who upon seeing Trowbridge, picked up her cell phone and called her son.

¶3      Trowbridge stopped Miner about two blocks later, and approached her vehicle.  Ignoring Trowbridge's requests, Miner continued talking on the phone as he stood outside her vehicle.  Trowbridge overheard Miner giving her son her location, and asking him to come get her.  Fearing an irate family member might show up, Trowbridge reached inside the vehicle to take the phone away from Miner.  As he did so, Miner struck Trowbridge on the chin, forcing his lip into his teeth and injuring him.  As a result of these events, Miner was arrested for assault on a peace officer and driving under the influence (DUI).  Miner was not formally charged with a DUI, but went to trial on the charge of assaulting a peace officer.

¶4      Prior to Miner's trial for assaulting a peace officer, counsel for the State and Miner met in the judge's chambers to address multiple evidentiary issues. Missoula County Attorney Fred Van Valkenburg stated he intended to present limited testimony about the reason Trowbridge stopped Miner. The discussion then turned to the admissibility of an in-car video showing the traffic stop and showing Miner in the back of a patrol car as she was transported to the county jail. The video contained audio references to Miner potentially being charged with a DUI. In regards to the admissibility of DUI references in the video, the following exchange occurred:

> VAN VALKENBURG:  In that regard, you know, I could certainly understand any reference to DUI, that that would be inappropriate, but I mean, there will be, I think, testimony that the Defendant appeared to be under the influence of alcohol. That's just a description of her condition at the time of the incident.
>
> COURT:  Okay. So before that's admitted, after you make a decision what you're going to do, let's discuss this matter again. You can raise any further objection, and if part of the question is that perhaps portions have to be redacted or not played, then that may be something we have to deal with at the time.

¶5      After voir dire, counsel for the parties again met in chambers and revisited the admissibility of the in-car video. The State had redacted all references to the DUI. Notably, the District Court's references to the admissibility of DUI evidence were not made pursuant to a motion in limine, but only in relation to the in-car video. The redacted version of the video was ultimately admitted at trial.

¶6      At trial, during the direct examination of Trowbridge, the following exchange took place:

3

VAN VALKENBURG: Oh, okay, I guess I misunderstood that. Did you then transport [Miner] to the Detention Center? I believe that Officer Jacob Jones may have been involved, too.

TROWBRIDGE: Right, and that's why I'm trying –I recall the time where I was talking to her while I was inside the car. And I think she was in my car at first, and then Jones, because there's the chance of her being – driving under the influence, because he took –

DEFENSE COUNSEL: Objection, Your Honor, we discussed this at length.

VAN VALKENBURG: I'd ask The Court to admonish the jury to not consider the statement.

COURT: Okay. Members of the jury, please don't consider that statement. Officer Trowbridge, please do not discuss that issue.

TROWBRIDGE: Okay.

¶7 The State then called Officer Jacob Jones to testify, and the following testimony occurred:

VAN VALKENBURG: Okay. And did you provide assistance or was the matter sort of under control by the time you got there?

JONES: When I got there, [Miner] was in handcuffs already.

VAN VALKENBURG: Did you have any significant role with respect to [Miner] after that?

JONES: Yes, I was the officer in charge for the DUI processing.
DEFENSE COUNSEL: Judge –

COURT: Officer – the jury, disregard – please don't discuss that portion of your work in this matter.

JONES: Okay.

¶8 After the testimony of officers Trowbridge and Jones, Miner's defense counsel did not make a motion for a mistrial based on the witnesses' references to a DUI charge. The jury

4

convicted Miner, and the District Court sentenced Miner to five years at the Montana State Prison, all suspended. Miner raises one issue on appeal:

¶9 *Did Miner receive ineffective assistance of counsel because her counsel did not move for a mistrial when two consecutive prosecution witnesses inadvertently mentioned Miner's potential DUI charge?*

## STANDARD OF REVIEW

¶10 A defendant's ineffective assistance of counsel claim involves mixed questions of law and fact which we review de novo. *State v. Gunderson*, 2010 MT 166, ¶ 66, 357 Mont. 142, 237 P.3d 74; *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

## DISCUSSION

¶11 Individuals are guaranteed the right to counsel in criminal prosecutions by Article II, Section 24 of the Montana Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. To analyze ineffective assistance of counsel claims, we utilize the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Whitlow*, ¶ 10. Under the *Strickland* test, a defendant must establish (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Whitlow*, ¶ 10. We need not address the prongs in any particular order, *Whitlow*, ¶ 11 (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069), and if the defendant makes an insufficient showing regarding one prong, the other need not be addressed, *Gunderson*, ¶ 68. Accordingly, we will not address the first prong of the *Strickland* test because we find that Miner was not prejudiced.

5

¶12 The second prong of the *Strickland* test focuses on whether counsel's deficient performance renders the trial result unreliable or the proceedings fundamentally unfair. *Riggs v. State*, 2011 MT 239, ¶ 12, 362 Mont. 140, 264 P.3d 693 (citing *State v. Rose*, 2009 MT 4, ¶ 115, 348 Mont. 291, 202 P.3d 749 (abrogated on other grounds)). To establish prejudice, the defendant must show that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. *Gunderson*, ¶ 67. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Riggs*, ¶ 12 (citing *Robinson v. State*, 2010 MT 108, ¶ 12, 356 Mont. 282, 232 P.3d 403).

¶13 Miner argues she was prejudiced by her counsel's failure to move for a mistrial because, had her counsel made such a motion, it would have been granted. Mistrials constitute an "exceptional remedy," *State v. Novak*, 2005 MT 294, ¶ 26, 329 Mont. 309, 124 P.3d 182, and are appropriate when a reasonable probability exists that inadmissible evidence might have contributed to the defendant's conviction, *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1005 (1997). A motion for mistrial should be denied for technical errors or defects that do not affect the substantial rights of the defendant. *See State v. Berosik*, 1999 MT 238, ¶ 20, 296 Mont. 165, 988 P.2d 775. In determining whether a prohibited statement contributed to a conviction, the strength of the evidence against the defendant--together with the prejudicial effect of the testimony and whether a cautionary jury instruction could cure any prejudice--must be considered. *Partin*, 287 Mont. at 18, 951 P.2d at 1005-06.

¶14 Miner relies on *Partin* to support her argument that there is a reasonable probability that the trial court would have granted a mistrial. In *Partin*, this Court held that inadvertent testimony of a defendant's prior arrest was sufficiently prejudicial to warrant a mistrial. *Partin*, 287 Mont. at 22, 951 P.2d at 1008. Partin was charged with forgery because he allegedly altered the payee line of a check to include his name, signed the check, and cashed it. *Partin*, 287 Mont. at 14, 951 P.2d at 1003. The only link between Partin and the crime was the signature on the back of the check. *Partin*, 287 Mont. at 18, 951 P.2d at 1006. The State's handwriting expert testified that he compared the signature to fingerprint cards from Partin's previous arrest. Defense counsel made a motion for a mistrial because the reference to Partin's previous arrest violated an order in limine. *Partin*, 287 Mont. at 14-15, 951 P.2d at 1003. The District Court denied Partin's motion, and Partin was convicted of forgery. This Court reversed on appeal, basing our decision on the "inherently prejudicial" effect of defendant's prior arrests in light of the generally "weak and conflicting evidence" against Partin. *Partin*, 287 Mont. at 20, 22, 951 P.2d at 1007-08.

¶15 Miner also cites *City of Helena v. Whittinghill*, 2009 MT 343, 353 Mont. 131, 219 P.3d 1244, and *City of Billings v. Mouat*, 2008 MT 66, 342 Mont. 79, 180 P.3d 1121, for the proposition that a district court may grant a mistrial when a witness inappropriately mentions evidence of a DUI. In both cases, the defendant was on trial for a DUI charge, and the inappropriate evidence was prejudicial because it related to driving under the influence of alcohol. These cases are distinguishable from the present matter because Miner was not on trial for a DUI charge.

¶16     In response to Miner, the State argues where evidence of guilt was overwhelming, this Court has upheld a district court's denial of a motion for a mistrial following inadvertent introduction of prior crimes evidence. *See State v. Ford*, 278 Mont. 353, 361, 926 P.2d 245, 249 (1996); *State v. Walker*, 280 Mont. 346, 353, 930 P.2d 60, 64 (1996). In both of these cases this Court held that, in light of the overwhelming evidence of guilt, general references to the defendants' prior criminal history did not contribute to their convictions.

¶17     Similarly, in *State v. Scarborough*, 2000 MT 301, 302 Mont. 350, 14 P.3d 1202, the defendant appealed the District Court's denial of his motion for a mistrial. At trial, two witnesses inappropriately mentioned Scarborough's probation, in violation of a motion in limine. *Scarborough*, ¶¶ 78-80. On appeal, this Court found the overwhelming evidence supported Scarborough's conviction and the denial of his motion for a mistrial was appropriate. *Scarborough*, ¶ 85.

¶18     Furthermore, Scarborough's main defense was not that he did not commit the acts in question, but that he did so under extreme mental or emotional stress. *Scarborough*, ¶ 84. This Court determined that any prejudice resulting from evidence of his probation was diminished in light of Scarborough's defense. Under those circumstances, this Court concluded "we find little danger that Scarborough's defense, based not on commission of the criminal acts but on the issues of mental state and mitigating circumstances, could have been prejudiced by evidence of his probation." *Scarborough*, ¶ 84.

¶19     As in *Ford*, *Walker*, and *Scarborough*, the overwhelming evidence of Miner's guilt overcomes any prejudice resulting from the testimony of officers Trowbridge and Jones.

The on-board video and audio clearly show an altercation between Officer Trowbridge and Miner. Officer Trowbridge gave consistent testimony that in the altercation Miner hit him in the face causing him injury and pain. Additionally, Trowbridge's injury was corroborated by a photograph and testimony from Sergeant Kosena, Trowbridge's supervising officer.

¶20 Miner never refuted this testimony or evidence. Instead, Miner relied on an implied defense that, if she did hit Trowbridge, it was unintentional and she was "reacting" to Trowbridge's aggressiveness. Miner's testimony was also inconsistent; initially she asserted that she did not remember striking Trowbridge, but later asserted that if she did strike Trowbridge, it was because of her views of men based on her previous marriage. Based on her testimony, Miner's primary defense was not that she did not commit the acts but, rather, that she did so under the influence of extreme mental or emotional stress or that she did so but lacked the required mental state to be found guilty. As in *Scarborough*, we find little danger that Miner's defense was prejudiced by the testimony of Trowbridge and Jones.

¶21 Any minor prejudice resulting from the officers' testimony was further diminished by the District Court's, and Van Valkenburg's, admonishments not to consider it. The District Court admonished the jury after both officers inadvertently mentioned the possibility of a DUI charge, and the prosecutor, Van Valkenburg, admonished the jury not to consider Trowbridge's testimony mentioning a DUI. "An error in the admission of evidence may be cured if the jury is admonished to disregard it." *State v. Conrad*, 241 Mont. 1, 9, 785 P.2d 185, 190 (1990). The admonishments in this case helped cure any minor prejudice that resulted from Trowbridge's and Jones' testimony.

9

¶22    Because we find that Miner was not prejudiced, there is no reasonable possibility that the testimony of officers Trowbridge and Jones contributed to Miner's conviction. Therefore, we conclude the second prong of S*trickland* was not met because Miner was not prejudiced by her counsel's failure to make a motion for a mistrial, and her trial was fundamentally fair. Since the second prong of *Strickland* was not met, we need not address the first.

## CONCLUSION

¶23    For the reasons stated above, we affirm Miner's conviction.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS