FILED

04/03/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0272

DA 16-0272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 71

ALBERTO GUILLEN,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 15-55
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Paul Sullivan, Measure, Sampsel, Sullivan & O'Brien, P.C., Kalispell,
Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

            Kirsten H. Pabst, Missoula County Attorney, Jason Marks, Chief Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: February 14, 2018

Decided: April 3, 2018

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Alberto Guillen appeals from an order of the Fourth Judicial District Court, Missoula County, denying his petition for postconviction relief. We affirm.

¶2 The issues on appeal are:

1. *Whether the District Court correctly denied Guillen's claim that he was actually innocent of the offense to which he pleaded guilty.*

2. *Whether Guillen's guilty plea was involuntary because he received ineffective assistance of counsel.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On July 30, 2011, Guillen struck his brother, Roberto, with a van at an intersection in Missoula. The brothers were loudly arguing when Roberto got on his bicycle and started to ride away. Guillen got into the van and pursued Roberto. Guillen then hit Roberto with the van, running Roberto and the bicycle over. Guillen then left the scene. Roberto sustained severe injuries, including partial paralysis, and was in the hospital for a month following the incident.

¶4 On August 15, 2011, the State filed an Information charging Guillen with attempted deliberate homicide and leaving the scene of an accident resulting in serious bodily injury. The Court appointed Assistant Public Defender Ed Sheehy to represent Guillen. Following plea negotiations, the State filed an Amended Information on November 10, 2011, amending the charge of attempted deliberate homicide to attempted mitigated homicide. On that same date, Guillen filed a document titled "Plea of Guilty and Waiver of Rights," in which Guillen pleaded guilty, acknowledged that the maximum penalty for attempted mitigated homicide was forty years, and acknowledged that the maximum penalty for

2

leaving the scene of an accident was ten years. In that document Guillen also recognized that there was not "a plea agreement in this case and I know that the judge may sentence me to the maximum sentence allowed by law." That day, Guillen appeared in court and pleaded guilty. Guillen was again informed of the maximum penalties and told this was an "open" plea; that is, there was no plea bargain. Guillen indicated he was satisfied with his attorney, he understood the trial rights that he was waiving, he was not under the influence of any drugs or medication, and he had discussed the case and its potential outcomes with his attorney. The court accepted Guillen's guilty plea, ordered a presentence investigation, and scheduled a sentencing hearing.

¶5      On December 29, 2011, following testimony from Roberto's fiancé and other witnesses, the court sentenced Guillen to forty years in prison for attempted mitigated deliberate homicide and ten years, to run concurrently, for Guillen's failure to remain at the scene. On April 12, 2012, Guillen filed a pro se motion to withdraw his guilty plea alleging, among other things, that his attorney told him that his sentence would be limited to fifteen years. Following the State's response, the District Court denied Guillen's motion to withdraw his guilty plea. Guillen appealed and this Court affirmed the court's denial in *State v. Guillen*, No. DA 12-0319, 2013 MT 184N, ¶¶ 2, 10, 2013 Mont. LEXIS 226.

¶6      Guillen filed a petition for postconviction relief in District Court on January 23, 2015, alleging that he had newly discovered evidence of his actual innocence and that his attorney was ineffective during plea negotiations. The State responded and the court subsequently scheduled an evidentiary hearing. Several witnesses testified during the two-day hearing. Roberto, who remains confined to a wheelchair, testified that he initially

3

told the police that he had no memory of being struck by the van. However, at the evidentiary hearing, Roberto testified that he recalled the incident, that it was an accident, and that he possibly swerved in front of his brother, making the collision equally his fault. Eyewitness Shannon Shields testified that she observed Guillen and Roberto physically fighting, immediately after which Guillen intentionally struck Roberto with the van. Eyewitness Diane Jontow testified that she had a clear view of the incident from her window and was certain Guillen intentionally struck Roberto with the van. Josh Jontow also saw the incident from his window and heard Guillen scream, "I am going to f—k you up," before driving his van directly at Roberto and striking him. The court found Roberto's testimony not credible and the three eyewitnesses' testimony credible.

¶7 Finally, Ed Sheehy testified that he told Guillen that pleading guilty to the charges contained in the State's Amended Information limited his maximum potential sentence from 100 years for attempted deliberate homicide to forty years for attempted mitigated homicide. Sheehy testified that he explained to Guillen that if the case went to trial, the jury would first consider attempted deliberate homicide before considering the lesser offense of attempted mitigated homicide, and that it would be very difficult to argue extreme stress as a mitigating factor. Sheehy also explained that the three eyewitnesses' testimony could have impacted the case. Sheehy said he did not interview Roberto because Roberto told law enforcement he had no recollection of the incident. The court found Sheehy to be credible and concluded, "Ed Sheehy did not speak with Roberto Guillen prior to sentencing because he made a tactical decision that it would be better for his client not to risk Roberto Guillen's involvement in the sentencing process."

4

¶8 The District Court denied Guillen's petition for postconviction relief. Although it classified Roberto's testimony that he may have swerved in front of the van as newly discovered evidence, the court concluded that Guillen was using the evidence to argue the incident was an accident, not to prove that he did not run over Roberto. The District Court also concluded that Guillen was not denied the effective assistance of counsel.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the findings of fact are clearly erroneous and weather the conclusions of law are correct. *Marble v. State*, 2015 MT 452, ¶ 13, 380 Mont. 366, 355 P.3d 742. Ineffective assistance of counsel claims present mixed questions of law and fact that this Court reviews de novo. *State v. Cobell*, 2004 MT 46, ¶ 8, 320 Mont. 122, 86 P.3d 20. A petitioner seeking to reverse a district court's denial of a petition for postconviction relief "bears a heavy burden." *Garrett v. State*, 2005 MT 197, ¶ 10, 328 Mont. 165, 119 P.3d 55 (quoting *Cobell*, ¶ 14). We will affirm a district court's decision to deny relief based on ineffective assistance of counsel if the petitioner fails to prove either prong of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Cobell*, ¶¶ 14-15.

## DISCUSSION

¶10 *1. Whether the District Court correctly denied Guillen's claim that he was actually innocent of the offense to which he pleaded guilty.*

¶11 Guillen argues that the District Court erred in failing to find that Roberto's testimony proves Guillen did not engage in attempted deliberate mitigated homicide. Guillen reasons that Roberto's testimony that he swerved in the path of his van shows that

this was not attempted homicide, but instead a tragic accident. The State maintains that Guillen's argument is not that he is innocent of wrongdoing, but that he is less culpable; that now, because of Roberto's testimony, he could present a stronger defense. The State also contends that Guillen overestimates the strength and reliability of his new evidence.

¶12 A person adjudged guilty of an offense who has no adequate remedy of appeal may petition the court for postconviction relief pursuant to § 46-21-101, MCA, alleging his sentence violates "the constitution or the laws of this state or the constitution of the United States." A person petitioning for relief pursuant to § 46-21-101, MCA, must file his claim "at any time within 1 year of the date that the conviction becomes final." Section 46-21-102(1), MCA. However, § 46-21-102, MCA, provides an exception to the one-year filing deadline:

> A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.

Section 46-21-102(2), MCA. Accordingly, a petitioner must file a petition for postconviction relief within one year of the conviction becoming final unless he alleges newly discovered evidence. When a petitioner claims newly discovered evidence, the filing period is extended if the claim is filed within one year of discovery of the evidence *and* the evidence, "if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted . . . ." Section 46-21-102(2), MCA.

6

¶13 Thus, subsection (2) extends the filing deadline for a petition for postconviction relief where the petitioner alleges newly discovered evidence establishing that the petitioner did not engage in the criminal conduct. If the newly discovered evidence meets the statutory standard, the petitioner may file a claim *more* than one year after the date his conviction became final. Section 46-21-102(2), MCA, sets forth the relevant time frames for filing a petition pursuant to § 46-21-101, MCA, and, except for describing what quality of newly discovered evidence justifies an exception to the generally applicable one-year time frame, does not otherwise change a petitioner's underlying challenge to his sentence; that is, that the sentence was imposed in violation of the United States Constitution or the Montana Constitution.[1]

¶14 To begin, Guillen received a full hearing on his allegation that his sentence was invalid. Guillen was not foreclosed from having his claim heard on the basis of timeliness and the filing deadlines imposed by § 46-21-102, MCA. The District Court required the State to respond and held a two-day hearing to consider Guillen's claim of newly discovered evidence, ensuring Guillen received adequate due process. Thus, § 46-21-102, MCA, is not at issue here. Rather, the dispositive issue is the merits of Guillen's underlying petition and claim, made pursuant to § 46-21-101, MCA. Guillen claims he is "actually innocent." Although not precisely stated by Guillen, his actual innocence claim is a substantive due process argument that his sentence violates his constitutional rights because the newly discovered evidence actually proves his innocence.

---

[1] Section 46-21-101, MCA, sets forth other grounds, not relevant here, that may serve as the basis for a challenge to the validity of a person's sentence.

¶15     Guillen argues that Roberto's new testimony, that Guillen running over him was possibly an accident, equates to evidence that he did not intentionally commit the offense. It is true that the necessary mens rea is an element of the crime of attempted mitigated homicide. However, proof of mens rea is based on circumstantial evidence, as we cannot obtain direct proof of what is in a person's mind or what he is actually thinking. Here, the District Court found that Roberto's testimony was not credible. Roberto testified only that it was possible he could have swerved in front of Guillen's van and that the accident may have been the fault of both brothers. Guillen never argued that he did not run over his brother with his van. His argument is that Roberto's recent revelation makes his defense stronger and that, therefore, he should be allowed to withdraw his prior admission made pursuant to his guilty plea.

¶16     The District Court considered Roberto's testimony along with the testimony of three eyewitnesses who testified that Guillen's actions were intentional. Roberto's recent revelation does not establish that Guillen's sentence is constitutionally invalid because he is actually innocent of the crime. The testimony, to which the District Court attributed little value based on Roberto's lack of credibility, simply provides somewhat circumstantial evidence tending to negate the element of mens rea. We conclude that the District Court properly denied Guillen relief based on his claim of actual innocence.

¶17     *2. Whether Guillen's guilty plea was involuntary because he received ineffective assistance of counsel.*

¶18     Guillen also challenges his sentence on the basis that he was denied his constitutional right to the effective assistance of counsel guaranteed by the Sixth

8

Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. We employ *Strickland's* two-part test to determine whether a defendant was denied effective assistance of counsel. *McGarvey v. State*, 2014 MT 189, ¶ 24, 375 Mont. 495, 329 P.3d 576. Under the *Strickland* test, Guillen must prove that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defendant. *McGarvey*, ¶ 24. If a defendant makes an insufficient showing under one part of the test, it is not necessary to address the other part. *McGarvey*, ¶ 24.

¶19 Guillen argues counsel's performance was deficient because counsel failed to interview Roberto and, instead, relied on the State's reports and a newspaper article stating that Roberto had no recollection of the incident. Guillen maintains that his decision to plead guilty was based on an incomplete set of facts and therefore involuntary. The District Court determined that Sheehy's decision to not interview Roberto was tactical because he determined it was better to not risk Roberto's involvement at sentencing.

¶20 At the sentencing hearing, Roberto's fiancé testified, "[Roberto] wanted me to come here and just tell the court" that "[y]ou destroyed us. You killed your brother. You might as well have killed him, because you pretty much did." She further testified, "[Roberto] just wanted me to look at you straight in the face and tell you exactly what . . . you did to him." In light of this testimony and other evidence tending to establish that Roberto did not want to discuss the incident, we cannot conclude that Sheehy's representation was deficient. Sheehy made a deliberate choice to not interview Roberto, as doing so could have jeopardized a more favorable sentence. Sheehy knew there were three eyewitnesses and that Roberto, who was partially paralyzed, would present as a sympathetic witness.

9

Thus, the District Court did not err in concluding that Sheehy's performance was not deficient, as his decision to refrain from interviewing Roberto was a tactical one.

¶21 Even if the District Court concluded that counsel's performance was deficient, Guillen was not prejudiced by counsel's errors. A claim that the ineffective assistance of counsel rendered a guilty plea involuntary requires proof that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. *State v. Miner*, 2012 MT 20, ¶ 12, 364 Mont. 1, 271 P.3d 56. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Miner*, ¶ 12. Here, Guillen testified that he pleaded guilty, even though he believed it was an accident, because, "I was facing 100 years, and the prosecutor told me that that's what he's going to be going for and I—I didn't see any—any evidence that was going to help me fight this case, you know." Guillen took advantage of the State's offer to resolve the case by limiting his prison exposure from 100 years to forty years. Accordingly, Guillen has not demonstrated that, but for counsel's errors, a reasonable probability exists that he would not have pleaded guilty.

¶22 The District Court correctly determined that Guillen did not establish his counsel was ineffective.

## CONCLUSION

¶23 We affirm the order denying Guillen's petition for postconviction relief.

/S/ LAURIE McKINNON

10

We Concur:

/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER